

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 22 2012

JAMES W. McCORMACK, CLERK
By: _____
                    DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## LITTLE ROCK DIVISION

JOHNATHAN D. DIAL AND LYDIA A. DIAL, HUSBAND AND WIFE, INDIVIDUALLY, AND ON BEHALF OF SIMILARLY SITUATED PERSONS,

Plaintiffs,

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR MORGAN STANLEY ABS CAPITAL I INC. TRUST 2006-HE3, INDIVIDUALLY, AND AS REPRESENTATIVE OF SIMILARLY SITUATED PERSONS; MORGAN STANLEY ABS CAPITAL I INC. TRUST 2006-HE3, INDIVIDUALLY, AND AS REPRESENTATIVE OF SIMILARLY SITUATED PERSONS; AND THOMAS J. MORTON AND WANNETTA Y. MORTON,

Defendants.

CASE NO. **4·12-CV-0180** *3RW*

Judge

This case ~~assigned to District Judge~~ *Wilson*
~~and to Magistrate Judge~~ *Young*

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that pursuant to 28 United States Code Sections 1332 and

1441, Defendant Deutsche Bank National Trust Company, as trustee for Morgan Stanley

ABS Capital I Inc. Trust 2006-HE3 ("DBNTC, as Trustee"),[1] hereby removes to this Court

---

[1] Defendant DBNTC, as Trustee holds title to properties only in its capacity as trustee of specific residential mortgage-backed securitization trusts. Thus, Plaintiffs' claims may only properly be brought against DBNTC in its capacity as trustee for the specific trust that holds or held title to the specific property at issue. To the extent Plaintiffs' allegations are deemed to apply to DBNTC in any other capacities, the arguments and positions stated herein are made on behalf of DBNTC in those capacities, as well. Also, all of Plaintiffs' allegations regarding actions taken in connection with foreclosures concern activities that are handled by loan servicers on behalf of the applicable trustee and trust, not by DBNTC in any capacity.

the state court action described below.[2]  As grounds for removal, DBNTC, as Trustee states the following:

## BACKGROUND

1.     On October 17, 2011, Plaintiffs Johnathan and Lydia Dial, individually and on behalf of similarly situated persons, commenced in the Circuit Court of Pulaski County, Arkansas, Fifth Division, an action entitled *Dial v. Deutsche Bank National Trust Company, as Trustee, et al.*, No. 60-CV-2011-5001, by filing a Complaint against Defendants Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE3; Morgan Stanley ABS Capital I Inc. Trust 2006-HE-3 ("the Trust"); and Thomas J. Morton and Wannetta Y. Morton ("the Mortons").  On February 14, 2012, Plaintiffs filed an Amended Complaint.  A copy of the entirety of the state court pleadings, including the Summons, Complaint, and Amended Complaint, are attached hereto as Exhibit A.

2.     Plaintiffs allege that DBNTC, as Trustee and the Trust violated the Arkansas Statutory Foreclosure Act ("ASFA"), Ark. Code Ann. §§ 18-50-101 to 18-50-117, by availing themselves of the procedures of the ASFA without being "authorized to do business in Arkansas." (Compl. ¶¶ 3, 5.)  Plaintiffs contend that to be "authorized to do business" within the meaning of the ASFA, an entity must obtain a certificate of authority from the Secretary of State pursuant to Ark. Code Ann. § 4-27-1501 and comply with the filing requirements of Ark. Code Ann. § 4-31-402.  (*Id.* ¶¶ 25-27.)  As a result of this purported failure to be properly authorized, Plaintiffs assert that all statutory foreclosures conducted in the name of DBNTC, as Trustee are invalid, and that DBNTC, as Trustee never acquired title to the real properties through those statutory foreclosures.  (*Id.* ¶¶ 4-5.)  Consequently,

---

[2] Plaintiff has named as a Defendant Morgan Stanley ABS Capital I Inc. Trust 2006-HE-3, which as is explained in detail below, is not a juridical entity capable of being sued in its own name.  *See infra* ¶¶ 14-20.  To the best of DBNTC, as Trustee's knowledge, Morgan Stanley ABS Capital I Inc. Trust 2006-HE-3 has not been served.  To the extent that an appearance of counsel on behalf of Morgan Stanley ABS Capital I Inc. Trust 2006-HE-3 is required, the undersigned counsel is also appearing on its behalf.

Plaintiffs allege, DBNTC, as Trustee failed to convey fee title to anyone who purchased real property that had been foreclosed through the ASFA, thereby breaching the covenants "to warrant and defend the title against all their own acts." (*Id.* ¶¶ 6-7.)

3.      With respect to Plaintiffs' property in particular, Plaintiffs allege that in January 2010, DBNTC, as Trustee instituted statutory foreclosure proceedings on the property located at 52 Dove Creek Circle in North Little Rock, Arkansas after the prior owners, the Mortons, defaulted on their mortgage. (*Id.* ¶¶ 17-20.) They contend that DBNTC, as Trustee later sold the property to itself at a public auction. (*Id.* ¶ 19.) Subsequently, in March 2010, Plaintiffs purportedly purchased the property from DBNTC, as Trustee. (*Id.* ¶ 23.) Plaintiffs claim that because DBNTC, as Trustee was not "authorized to do business in Arkansas," it failed to foreclose on the Mortons' property under the ASFA, failed to acquire title to the property at the public auction, and failed to transfer the property in fee simple to Plaintiffs. (*Id.* ¶¶ 28-34.)

4.      The purported plaintiff class consists of "[a]ll persons who, on or after October 17, 2006, purchased real property and are grantees thereto in a general or special warranty deed from an entity that was not authorized to do business in Arkansas before availing itself of the [ASFA]." (*Id.* ¶ 37.) Plaintiffs also seek to have a class of defendants certified and represented by DBNTC, as Trustee. The putative defendant class would consist of all entities that availed themselves of the procedures of the ASFA without being "authorized to conduct business" in Arkansas, and thereafter executed and delivered a warranty deed to the subject real property after October 17, 2006. (*Id.* ¶¶ 48-49.)

5.      Plaintiffs assert a single claim for declaratory judgment. Specifically, they seek a declaration that the Mortons hold paramount title to the subject property, that DBNTC, as Trustee breached the covenant of seisin, and that Plaintiffs are entitled to both equitable and monetary relief. (*Id.* ¶¶ 35, 65.) Plaintiffs also petition for an order against Defendants

and the purported defendant class to show why further relief should not be granted.  (*Id.*

¶ 65.)

## TIMELINESS OF REMOVAL

6.      The docket of the Circuit Court of Pulaski County, Arkansas, Fifth Division

shows that the Complaint was served on DBNTC, as Trustee on February 21, 2012.  (Ex. A.)

This Notice is timely filed within 30 days of service of the Summons and Complaint on

DBNTC, as Trustee.  *See* 28 U.S.C. § 1446(b); *Brown v. Tokio Marine & Fire Ins. Co.*, 284

F.3d 871, 873 (8th Cir. 2002) ("The law is settled in this Circuit that the thirty-day period to

file a notice of removal runs from the time that a defendant is served with the complaint, even

when the defendant is a later-served defendant and does not receive service until the time

limit during which the first-served defendant could have removed the case has expired.");

*accord Marcano Enters. of Kansas v. Z-Teca Rests., L.P.*, 254 F.3d 753, 756-57 (8th Cir.

2001).

## DIVERSITY JURISDICTION EXISTS

7.      Removal of this action is proper because this Court has original jurisdiction

pursuant to 28 United States Code Section 1332 , and may be removed to this Court pursuant

to 28 United States Code Section 1441(b) because it is a civil action between citizens of

different states and the matter in controversy exceeds the sum of $75,000, exclusive of

interest and costs.

8.      Complete diversity of citizenship exists between Plaintiffs and Defendants.

9.      Plaintiffs are residents and citizens of Arkansas.  (Compl. ¶ 10); *see Yeldell v.*

*Tutt*, 913 F.2d 533, 537 (8th Cir. 1990).

10.     None of the properly named Defendants—namely, DBNTC, as Trustee—is a

citizen of the State of Arkansas.  Defendant DBNTC, as Trustee is a citizen of California

because it is a national bank organized to carry on the business of a limited purpose trust

company and its articles of association designate that its main office is located in California.
*Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006) (holding that a national bank's
citizenship is the state designated in its articles of incorporation as the locus of its main
office).

11.     The Complaint also names as a Defendant Morgan Stanley ABS Capital I Inc.
Trust 2006-HE3.  However, the Trust is not a juridical entity and, therefore, cannot be sued in
its own name.  *See First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd.*, 351 F.3d 810,
814 (8th Cir. 2003).  The trustee, DBNTC, as Trustee—not the Trust—is the property party
to sue or be sued with respect to trust assets.  Regardless, for diversity purposes, the Trust is
considered a citizen of California because its trustee, DBNTC, as Trustee, is a citizen of
California.  *See Crews & Assocs., Inc. v. Nuveen High Yield Mun. Bond Fund, Inc.*, 783 F.
Supp. 2d 1066 (E.D. Ark. 2011); *Beech v. Select Portfolio Servicing, Inc.*, 2010 WL 2775855
(E.D. Ark. 2010).

12.     The Complaint also names as Defendants the Mortons, who are residents of
Arkansas.  However, the Court should realign the Mortons as plaintiffs because Plaintiffs'
and the Mortons' interests are aligned with respect to the primary and controlling matter in
dispute.  In the alternative, the Court should disregard the citizenship of the Mortons in
determining diversity jurisdiction on the ground that the Mortons were fraudulently joined.

13.     Only the citizenship of the named representative parties in a class action is
considered for diversity purposes.  That the action is maintained on behalf of other, non-
diverse class members does not affect diversity jurisdiction.  *Snyder v. Harris*, 394 U.S. 332,
339-40 (1969).

### The Citizenship of the Trust Is Irrelevant Because It Is Not a Juridical Entity

14.     The citizenship of Defendant Morgan Stanley ABS Capital I Inc. Trust 2006-
HE3 is irrelevant for purposes of diversity jurisdiction because trusts are not juridical entities

in Arkansas, i.e., they cannot sue or be sued. Federal Rule of Civil Procedure 17 governs the issue of whether a named party has the capacity to be sued in United States district courts. Under the Rule, the "[c]apacity to sue or be sued is determined as follows: (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile; (2) for a corporation, by the law under which it was organized; and (3) for all other parties, by the law of the state where the court is located . . . ." Fed. R. Civ. P. 17(b). Here, the Trust, being neither an individual nor a corporation, falls within the third subsection. Thus, whether the Trust has the capacity to be sued depends on the law of Arkansas. While Arkansas courts have not squarely addressed this issue, relevant Arkansas statutes, persuasive authority from sister states, and other federal courts indicate that trusts are not juridical entities.

15.     At common law, trusts were not considered independent legal entities and, therefore, could not sue or be sued in their own names. Bogert, *The Law of Trusts and Trustees*, § 712. Consequently, the capacity to sue or be sued rested in the trustee. *Id.* at § 869, p. 113; *see also First Union Nat'l Bank*, 351 F.3d at 814 ("Historically, a trust estate was not a juridical entity, hence the observation that a suit by strangers to the trust must be brought against the trustees thereof individually and not against the fictional entity." (citation omitted)).

16.     In Arkansas, the traditional rule is that unincorporated associations, such as trusts, lack the capacity to sue or be sued. *Fausett & Co., Inc. v. Bogard*, 285 Ark. 124, 126 (1985). Over the past few decades, the Arkansas Legislature has modified the common law, clearly establishing which entities are juridical entities under Arkansas law. Currently, the following entities have the capacity to sue and be sued in Arkansas:

      a.     Corporations (Ark. Code Ann. §§ 4-26-204(a)(2); 4-27-302(1));

    b.        Partnerships (Ark. Code § 4-46-307(a).  The Act became applicable to all partnerships on January 1, 2005.  *See* Act 1518 of 1999, § 1205.);

    c.        Limited partnerships (Ark. Code Ann. §§ 4-47-104; 4-47-105);

    d.        Limited liability partnerships (Ark. Code Ann. §§ 4-46-306; 4-46-307);

    e.        Limited liability limited partnerships (Ark. Code Ann. §§ 4-47-104; 4-47-105);

    f.        Limited liability companies (Ark. Code Ann. § 4-32-1101);

    g.        Unincorporated nonprofit associations (Ark. Code Ann. § 4-28-507(a));

    h.        Counties (Ark. Code Ann. § 14-14-501);

    i.        Cities (Ark. Code Ann. § 6-13-102(a)); and

    j.        School districts (Ark. Code Ann. § 14-54-101(1)).

17.      Trusts are not included in the list of recognized juridical entities under Arkansas law.  Thus, the Arkansas Legislature has not manifested an intent to modify the common law as it pertains to trusts.

18.      Precedent from sister states and other federal courts support the conclusion that trusts lack capacity to sue or be sued in their own name.  *See, e.g., Coverdell v. Mid-South Farm Equip. Ass'n*, 335 F.2d 9, 12-13 (6th Cir. 1964) (holding that a trust is not an entity that can be sued and that "the trustees would have been the proper parties defendant in the instant matter, rather than the trust"); *Fred Martin Motor Co. v. LML Techs., Inc.*, 2008 WL 750555, at *1 (N.D. Ohio Mar. 19, 2008) (holding that the trustee is the legal owner of the trust res and the proper party defendant in a suit involving a trust); *Colo. Springs Cablevision, Inc. v. Lively*, 579 F. Supp. 252, 254 (D. Colo. 1984) (holding that a trust is not an entity that can be sued); *Hershel Cal. Fruit Prods. Co. v. Hunt Foods, Inc.*, 119 F. Supp. 603, 607 (N.D. Cal. 1954) ("Under both the Federal Rules of Civil Procedure and the law of

California, the trustee, rather than the trust itself, is the proper party to a legal action."); *W. Life Trust v. North Dakota*, 536 N.W.2d 709, 712 (N.D. 1995) ("A trust generally is not a separate legal entity, and cannot sue or be sued in its own name."); *Back Acres Pure Trust v. Fahnlander*, 443 N.W.2d 604, 605 (Neb. 1989) ("[A]s a general rule, a trust is not a legal personality, and the trustee is the proper person to sue or be sued on behalf of such trust.").

19.     "A trust is merely the description of a relationship between the legal and equitable owners of property." *Colorado Springs Cablevision*, 579 F. Supp. at 254. As such, the trust itself cannot own anything. Bogert, *The Law of Trusts and Trustees*, § 1. Rather, the trustee, as the holder of legal title to the trust res, is generally the juridical person who can sue or be sued with respect to trust assets. *Id.* at §§ 594; 869; *see also Yonce v. Miners Mem'l Hosp. Ass'n, Inc.*, 161 F. Supp. 178, 189 (W.D. Va. 1958) ("A Trust is a fiduciary relationship by which the trustees hold legal title to property for the benefit of others, and a suit by strangers to the trust must be brought against the trustees thereof individually and not against the fictional entity.").

20.     Because Defendant Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 is not a juridical entity under Arkansas law, its citizenship is irrelevant here. Instead, because DBNTC, as Trustee, not the Trust, is the proper party defendant here, its citizenship controls for purposes of diversity.

### The Trust Is a Citizen of California

21.     Even if trusts were juridical entities under Arkansas law, the Trust's citizenship would be that of its trustee because DBNTC, as Trustee (not the Trust) is the juridical person who can sue or be sued with respect to trust assets. Complete diversity of citizenship is determined by the real parties to the controversy. *Associated Ins. Mgmt. Corp. v. Ark. Gen. Agency*, 149 F.3d 794, 796 (8th Cir. 1998) (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)). Where the trustee, not the trust, is the real party in interest, the

citizenship of the trustee controls for diversity purposes. *Crews & Assocs., Inc.*, 783 F. Supp. 2d at 1069.

22.     A recent case from the Eastern District of Arkansas, which addresses the citizenship of a trust for diversity purposes, confirms that the citizenship of the trustee, not the trust beneficiaries, determines diversity because the trustee is the juridical person who can sue or be sued with respect to trust assets. In *Beech v. Select Portfolio Servicing, Inc.*, Plaintiff sued, among other defendants, "Wells Fargo Bank as trustee of a mortgage trust" in Arkansas circuit court. 2010 WL 2775855 at *1 (E.D. Ark. July 13, 2010). After Defendants removed to the Eastern District of Arkansas, Plaintiff moved to remand, in part, on the ground that diversity was lacking due to the presence of non-diverse trust beneficiaries. *Id.* The court rejected Plaintiff's argument, reasoning that, under the Supreme Court's holding in *Navarro*, the trustee's citizenship, not that of the trust's unknown beneficiaries, is considered for purposes of diversity:

> [T]he citizenship of unknown trust beneficiaries does not destroy complete diversity. The beneficiaries are not the real parties in interest here: the complaint makes allegations against Wells Fargo Bank as trustee, not against the beneficiaries. And Beech claims Wells Fargo has the usual powers of a trustee – to hold, manage, and dispose of the note. Wells Fargo's citizenship, not that of the trust beneficiaries, is considered in the Court's diversity analysis. *Id.*

23.     Here, as in *Beech*, Plaintiffs' Complaint makes allegations against DBNTC, as Trustee, not against unknown trust beneficiaries. Specifically, Plaintiffs contend that DBNTC, as Trustee violated the ASFA because it purportedly availed itself of the statutory foreclosure procedures without being "authorized to do business in Arkansas." (Compl. ¶ 3.) Although Plaintiffs make a similar ***conclusory*** allegation against the Trust (*id.* ¶ 5), Plaintiffs do not make any ***factual*** allegations regarding the Trust. Rather, Plaintiffs claim that DBNTC, as Trustee, either itself or through its attorney-in-fact: foreclosed on the subject property; sold and purchased the property at public auction; entered into a contract to sell the

property to Plaintiffs; and conveyed a special warranty deed to Plaintiffs. (*Id.* ¶¶ 17-24.)

Further, in seeking certification of a purported defendant class, Plaintiffs seek to certify a

class of defendants who are similarly situated to DBNTC, as Trustee (not the Trust) and who

would be represented by DBNTC, as Trustee (not the Trust). (Compl. ¶¶ 48-61.)

Accordingly, DBNTC, as Trustee, not the Trust itself, is the real party in interest in this suit.

24.     Because DBNTC, as Trustee is the real party to the controversy in this case, its

citizenship—namely, California—controls for purposes of determining complete diversity.

*See Crews & Assocs., Inc.*, 783 F. Supp. 2d at 1069.

### The Mortons Should Be Realigned as Plaintiffs

25.     The Mortons should be realigned as plaintiffs in this case.  In determining

whether complete diversity exists in cases removed from state court, the federal court has the

responsibility to align the parties according to their real interests in the litigation. *City of

Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69-70 (1941).  The alignment in the

complaint is not controlling. *Dryden v. Dryden*, 265 F.2d 870, 873 (8th Cir. 1959).  In the

Eighth Circuit, the federal court has a duty to look beyond the pleadings and to arrange

parties according to their sides in the dispute. *Universal Underwriters Ins. Co. v. Wagner*,

367 F.2d 866, 870 (8th Cir. 1966).  The court must inquire into "the principal purpose of the

suit" and the "primary and controlling matter in dispute." *Id*.  The question of realignment is

tested at the time the complaint is filed. *Id*. at 871.

26.     Plaintiffs' and the Mortons' interests are aligned with respect to the "primary

and controlling matter in dispute":  whether DBNTC, as Trustee was "authorized" to conduct

business in Arkansas within the meaning of the ASFA when the non-judicial foreclosure

proceeding on the property at issue was initiated it its name. (*See* Compl. ¶¶ 1-9, 54.)  As the

former owners of the property at issue when non-judicial foreclosure proceedings were

initiated, the Mortons share Plaintiffs' interest in invalidating the foreclosure.  Moreover,

there is no divergence of interests between Plaintiffs and the Mortons with respect to title to the property because Plaintiffs request a declaration that the Mortons hold paramount title. (*Id.* ¶ 35(b).)

27.     There is no actual or substantial controversy between Plaintiffs and the Mortons. Plaintiffs make no allegations against the Mortons. Nor do Plaintiffs seek any form of relief from the Mortons. Rather, Plaintiffs appear to have joined the Mortons only because they allegedly "have an interest which would be affected by the declaration of rights sought in this action by virtue of their having mortgaged the Property." (*Id.* ¶ 12.) Under the Arkansas Declaratory Judgment Act, when declaratory relief is sought, "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Ark. Code Ann. § 16-111-106. While the Mortons may have an interest in this litigation, it is an interest that is aligned with that of Plaintiffs.

28.     In sum, Plaintiffs and the Mortons are aligned with respect to the primary dispute in this action and share the same interest in the outcome of this litigation: a declaration that the Mortons hold superior title to the subject property. Plaintiffs neither make any allegations nor seek any form of relief from the Mortons. Thus, at the time the Complaint was filed, the Mortons' interests were not adverse to, but rather aligned with Plaintiffs' interests. Therefore, the Mortons should be realigned as plaintiffs in this action.

## In the Alternative, the Mortons Have Been Fraudulently Joined

29.     In the alternative, the Court should disregard the citizenship of the Mortons in determining diversity jurisdiction because they were fraudulently joined. "[J]oinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002). *See also Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400,

406 (8th Cir. 1977) ("[I]t is well established that if it is clear under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained."). To evaluate whether joinder was fraudulent for purposes of removal, the court must determine "whether there is arguably a reasonable basis for predicting that the state's law might impose liability based upon the facts involved." *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 811 (8th Cir. 2003).

30.     There is no basis for predicting that Arkansas might impose liability on the Mortons based upon the facts alleged in the Complaint.  Plaintiffs have not asserted any claim against the Mortons, let alone one that has a reasonable basis in fact and law.  Moreover, Plaintiffs have not alleged that the Mortons engaged in any wrongdoing.  (Compl. ¶¶ 1-9; 25-35.)  Plaintiffs' Complaint does not seek any relief against the Mortons at all.  Rather, Plaintiffs joined the Mortons as defendants solely because they allegedly "have an interest which would be affected by the declaration of rights sought in this action by virtue of their having mortgaged the [property at issue]."  (*Id.* ¶ 12.)

31.     Because the facts as alleged in Plaintiffs' Complaint indicate that there is no reasonable basis for believing that liability might be imposed on the Mortons (the only non-diverse Defendants) under Arkansas law, the Mortons are a fraudulently joined party whose citizenship should be disregarded for purposes of diversity jurisdiction. *See Wilkinson v. Schackelford*, 478 F.3d 957, 963-64 (8th Cir. 2007).

### The Amount in Controversy Exceeds the Jurisdictional Minimum

32.     In addition to fulfilling the complete diversity requirement, Plaintiffs' Complaint also satisfies the amount in controversy requirement.  In an action seeking declaratory relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432

U.S. 333, 347 (1977)).  In other words, the amount in controversy is the value of the right in issue, viewed from the plaintiff's perspective.  *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1018-19 (8th Cir. 2010); *Advance Am. Servicing of Ark., Inc. v. McGinnis*, 526 F.3d 1170, 1174 (8th Cir. 2008).

33.     Plaintiffs' Complaint does not allege a specific amount in controversy. Rather, Plaintiffs request declaratory relief to determine their rights and status with regard to the subject property.  (Compl. ¶¶ 1, 62-65.)  Further, Plaintiffs seek damages based upon DBNTC, as Trustee's alleged breach of the covenant of seisin.  (*Id.* ¶¶ 35, 65.)  In Arkansas, damages for breach of the covenant of seisin are ordinarily measured by the grantee's purchase price plus interest.  *Logan v. Moulder*, 1 Ark. 313, 323-34 (1839).  Plaintiffs purchased the property at issue from DBNTC, as Trustee for $180,000 on March 22, 2010. (*See* Request for Judicial Notice in Support of Notice of Removal Ex. 1.)  Because the price of the property exceeds $75,000, the requisite minimum amount in controversy for purposes of diversity jurisdiction is established.

34.     Therefore, pursuant to 28 United States Code Section 1332, this Court has diversity jurisdiction, and DBNTC is entitled to remove to this Court based upon that jurisdiction.

## PROCEDURAL REQUIREMENTS AND LOCAL RULES HAVE BEEN SATISFIED

35.     All of the statutory requirements for removal to this Court under 28 United States Code Section 1332 and 28 United States Code Sections 1441(a) and (b) have been satisfied.

36.     Pursuant to 28 United States Code Section 1446(a), DBNTC has attached all process, pleadings and orders served upon it to date as Exhibit A.

37.     Pursuant to 28 United States Code Section 1446(d), a copy of this Notice of Removal will be served upon Plaintiffs' counsel and filed with the Circuit Court of Pulaski County, Arkansas, Fifth Division.

38.     The consent of Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 is not required because it is not a juridical entity in Arkansas, *First Union Nat'l Bank*, 351 F.3d at 814, and because DBNTC, as Trustee, not the Trust, is the real party to the controversy, *Associated Ins. Mgmt. Corp.*, 149 F.3d at 796.[3] The consent of the Mortons is also not required because they should be realigned as plaintiffs or, in the alternative, have been fraudulently joined as defendants. *See Hemker v. St. Louis Sci. Ctr.*, 2008 WL 2020210 at *1 n.1 (E.D. Mo. May 8, 2008) ("Although removal generally requires the consent of all defendants, there is a judicially created exception for parties who are fraudulently joined, because removal in those cases is based on the contention that no other proper defendant exists." (citation omitted)) ; *Palmquist v. Conseco Med. Ins. Co.*, 128 F. Supp. 2d 618, 620-21 (D.S.D. 2000).

39.     By filing this Notice of Removal, DBNTC, as Trustee does not waive any of its affirmative defenses, including, but not limited to, its right to move to dismiss for lack of personal jurisdiction, improper service, improper venue, or failure to state a claim.

---

[3] *See supra* note 2.  In addition, the state court docket indicates that the Trust has not been served.  Thus, it need not consent to removal.  *See Pritchett v. Cottrell, Inc.*, 512 F.3d 1057, 1062 (8th Cir. 2008) ("There must . . . 'be some timely filed written indication from each *served* defendant,' or from some person with authority to act on the defendant's behalf, indicating that the defendant 'has actually consented' to the removal." (emphasis added)).  To the extent that its consent to removal is required, the Trust would consent.

WHEREFORE, DBNTC, as Trustee prays that the action pending against it as Case No. 60-CV-2011-5001, in the Circuit Court of Pulaski County, Arkansas, Fifth Division, be removed to this Court.

Dated:  March 22, 2012                Respectfully submitted,

Elizabeth A. Frohlich (*pro hac vice* application to be submitted)
Laya R. Kaigh (*pro hac vice* application to be submitted)
MORGAN, LEWIS & BOCKIUS, LLP
One Market, Spear Street Tower
San Francisco, California  94105
Phone:  (415) 442-1000
Fax:     (415) 442-1001
Email: efrohlich@morganlewis.com
          lkaigh@morganlewis.com

and

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201-3699
Phone:  (501) 371-0808
Fax:     (501) 376-9422
Email  ccoleman@wlj.com

By:  _____
       Charles T. Coleman (80030)

*Attorneys for Defendant Deutsche Bank National Trust Company, as trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE3*[4]

---

[4] *See supra* note 2.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the forgoing Notice of Removal has been electronically filed on this Court's CM/ECF system and served and also provided by electronic mail and facsimile, this 22nd day of March, 2012, upon the following:

Drake Mann
Christopher L. Travis
GILL ELROD RAGON OWEN & SHERMAN,
P.A.
425 West Capitol Avenue, Suite 3801
Little Rock, AR 72201

and

Sean F. Rommel
James C. Wyly
WYLY-ROMMEL, PLLC
2311 Moores Lane
Texarkana, TX 75503

*Attorney for Plaintiffs*

Paul A. Schmidt, Sr.
SCHMIDT LAW FIRM, PLC
401 W. Pine Street
P.O. Box 564
Cabot, AR 72023

*Attorneys for Defendants Thomas J. Morton and Wannetta Y. Morton*

Charles T. Coleman

**STATE OF ARKANSAS**
**CIRCUIT COURT**
**PULASKI COUNTY**

FILED 10/17/11 16:13:30
Larry Crane Pulaski Circuit Clerk

Johnathan D. Dial and Lydia A. Dial,
husband and wife, individually, and on
behalf of similarly situated persons,

**5TH DIVISION**

         **Plaintiffs,**

**60CV2011 5001**

   **versus**

Civil Action N

Deutsche Bank National Trust Company, as
Trustee for Morgan Stanley ABS Capital I
Inc. Trust 2006-HE3, individually, and as
representative of similarly situated persons;
Morgan Stanley ABS Capital I Inc. Trust
2006-HE3; Wilson & Associates, P.L.L.C.;
and Thomas J. Morton and Wannetta Y.
Morton.

**COMPLAINT**

        **Defendants.**

60CV-11-5001    601-60100032659-004
JOHNATHAN D DIAL ET AL V DE 12 Pages
PULASKI CO    10/17/2011 08:16 AM
CIRCUIT COURT    CC05$

## SUMMARY OF CASE

1.    This case seeks to remedy Deutsche Bank National Trust Company's,
Morgan Stanley ABS Capital I Inc. Trust 2006-HE3's, and all other similarly situated
mortgagees' and trustees' past and continuing violations of Arkansas's Statutory
Foreclosure Act, which is codified at Ark. Code Ann. §§ 18-50-101 – 117 (the "Statutory
Foreclosure Act").

2.    Defendants Deutsche Bank National Trust Company, Morgan Stanley
ABS Capital I Inc. Trust 2006-HE3, and all other similarly situated mortgagees and
trustees violated and continue to violate the Statutory Foreclosure Act by failing to be
"authorized to do business in Arkansas," prior to availing themselves of the remedies
provided by the Statutory Foreclosure Act.

3.    Because Deutsche Bank National Trust Company, Morgan Stanley ABS
Capital I Inc. Trust 2006-HE3, and all other similarly situated mortgagees and trustees



EXHIBIT

A

failed to comply with the requirements of the Statutory Foreclosure Act, all purported foreclosure sales are invalid, and Deutsche Bank National Trust Company, Morgan Stanley ABS Capital I Inc. Trust 2006-HE3, and all other similarly situated mortgagees and trustees did not acquire title to the real property in which they purported to foreclose their mortgage interest.

4.      Any purchaser of real property from Deutsche Bank National Trust Company, Morgan Stanley ABS Capital I Inc. Trust 2006-HE3, or any other similarly situated mortgagee or trustee, consequently, did not acquire title to that real property.

### THE PARTIES, JURISDICTION, AND VENUE

5.      Plaintiffs, Johnathan D. Dial and Lydia A. Dial, are residents of Pulaski County, Arkansas; they have an interest which would be affected by the declaration of rights sought in this action by virtue of their having purchased Lot 26, Block 17, Overbook Addition to the City of Little Rock, Arkansas, more commonly known as 52 Dove Creek Circle, North Little Rock, Arkansas, from Defendant Deutsche Bank National Trust Company, which claimed title by having availed itself of the procedures of the Statutory Foreclosure Act when it was not authorized to do business in Arkansas.

6.      Defendant Deutsche Bank National Trust Company is a national banking association; it is not authorized to do business in this state.

7.      Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 is a foreign trust; it is not authorized to do business in this state; it has an interest which would be affected by the declaration of rights sought in this action.

8.      Wilson & Associates, P.L.L.C., is an Arkansas law firm based in Pulaski County among whose members are included attorneys who are active licensed members

of the Bar of the Supreme Court of the State of Arkansas; Wilson & Associates has interests which would be affected by the declaration of rights sought in this action by virtue of its having served as attorney-in-fact in the relevant transactions.

9.      Thomas J. Morton and Wannetta Y. Morton have an interest which would be affected by the declaration of rights sought in this action by virtue of their having mortgaged Lot 26, Block 17, Overbook Addition to the City of Little Rock, Pulaski County, Arkansas, more commonly known as 52 Dove Creek Circle, North Little Rock, Arkansas; they are individuals whose whereabouts are presently unknown.

10.     This Court has personal jurisdiction over Defendants pursuant to Ark. Code Ann. § 16-13-201.

11.     Venue is proper in this Court pursuant to Ark. Code Ann. § 16-55-213.

## OPERATIVE LAW

12.     The Statutory Foreclosure Act states that no "person, firm, company, association, fiduciary, or partnership, either domestic or foreign, shall avail themselves of the procedures under this chapter unless authorized to do business in this state." Ark. Code Ann. § 18-50-117.

## INTRODUCTION

### Plaintiff Class Allegations

13.     The Plaintiffs bring this state-wide class action on behalf of themselves and all other persons similarly situated in relation to Deutsche Bank National Trust Company, Morgan Stanley ABS Capital I Inc. Trust 2006-HE3, and all other similarly situated mortgagees and trustees.

14.    The proposed class (the Class) is defined as follows:

All persons who purchased real property that had been the subject of a sale purportedly made pursuant to the procedures under Chapter 50 of Title 18 of the Arkansas Code by a mortgagee or trustee when the mortgagee or trustee was not authorized to do business in the State of Arkansas.

Excluded from the class are the following individuals and/or entities:

a.   Any and all federal, state, or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

b.   Individuals or entities, if any, who timely opt out of this proceeding using the correct protocol for opting out;

c.   Individuals or entities, if any, who have previously settled or compromised claims(s) as identified herein for the class; and

d.   Any currently sitting circuit judge and/or person within the third degree of consanguinity to any circuit judge.

15.    The plaintiffs will fairly and adequately protect the interest of the class, and are adequate representatives of the class of persons defined herein. The plaintiffs are interested in the outcome of this lawsuit and understand the importance of adequately representing every member of the classes described herein.

Numerosity

16.    On information and belief, Deutsche Bank National Trust Company has availed itself of the procedures under Chapter 50 of Title 18 when it was not authorized to do business in this state on more than two hundred and twenty occasions in Pulaski County alone.

17.    As a result, the parties are so numerous that it is impracticable to bring all before the Court within a reasonable time, and a class action is therefore superior to other methods for the fair and efficient adjudication of this controversy.

Commonality

18.     There are common questions of law and fact affecting the members of the class. Such common questions predominate over any questions affecting only individual class members.

19.     These questions include, but are not limited to:

a.  Whether Deutsche Bank National Trust Company violated Ark. Code Ann. § 18-50-118;

b.  Whether Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 violated Ark. Code Ann. § 18-50-118;

c.  Whether Deutsche Bank as Trustee violated Ark. Code Ann. § 18-50-118;

d.  Whether Wilson & Associates violated Ark. Code Ann. § 18-50-118;

e.  Whether Plaintiffs and the Class are entitled to declaratory relief;

f.  Whether Defendants breached contracts of sale to the Plaintiffs and the Class;

g.  Whether Plaintiffs and the Class are entitled to injunctive relief;

h.  Whether Plaintiffs and the Class are entitled to specific performance; and

i.  Whether Plaintiffs and the Class are entitled to attorneys fees and costs.

Typicality

20.     Claims of the named Plaintiffs are typical of the claims of other members of the class in that they all arise from Deutsche Bank National Trust Company's, Morgan

Stanley ABS Capital I Inc. Trust 2006-HE3's, and all other similarly situated mortgagees' and trustees' normal business practice of utilizing the Statutory Foreclosure Act's procedures when Deutsche Bank National Trust Company, Morgan Stanley ABS Capital I Inc. Trust 2006-HE3, or other similarly situated mortgagees and trustees were not authorized to do business in the state.

Adequacy of Representation

21.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests do not conflict with the interests of the Class members. Furthermore, Plaintiffs have retained competent counsel experienced in class action litigation. Plaintiffs' counsel will fairly and adequately protect and represent the interests of the Class.

22.     In addition, Deutsche Bank National Trust Company, Deutsche Bank as Trustee have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

23.     In addition, questions of law or fact common to the Class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

24.     Jurisdiction and venue are proper in Pulaski County, Arkansas.

**FACTS**

25.     On January 23, 2006, Thomas J. Morton and Wannetta Y. Morton executed and delivered a mortgage, recorded on February 17, 2006, as Instrument No. 2006012916 in the real estate records of Pulaski County, Arkansas, to Lot 26, Block 17,

Overbook Addition to the City of Little Rock, Pulaski County, Arkansas (the "Property").

Exhibit A.

26.     In January 2010, Wilson & Associates, P.L.L.C., was a law firm among

whose members was included Matthew Smith, Esquire, an attorney who was an active

licensed member of the Bar of the Supreme Court of the State of Arkansas.

27.     On January 12, 2010, Wilson & Associates, P.L.L.C., acting as attorney-

in-fact for Defendant Deutsche Bank National Trust Company, as Trustee for Defendant

Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 ("Deutsche Bank as Trustee"),

proceeded to sell the Property at public auction, pursuant to Arkansas's Statutory

Foreclosure Act (the "Auction").

28.     At the Auction, the Property was purportedly sold to Deutsche Bank as

Trustee.

29.     Thereafter, Wilson & Associates, P.L.L.C. prepared a Mortgagee's Deed

purportedly granting, selling, and conveying the Property to Deutsche Bank as Trustee.

The Mortgagee's Deed was filed and recorded in the real estate records of Pulaski

County, Arkansas, on January 22, 2010.  Exhibit B.

30.     On January 22, 2010 Morgan Stanley ABS Capital I Inc. Trust 2006-HE3

was not "authorized to do business in this state," as that phrase is used in Ark. Code Ann.

§ 18-50-117, and, therefore, Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 could

not avail itself of the procedures of Statutory Foreclosure Act.

31.     On January 22, 2010, Defendant Deutsche Bank National Trust Company

and Deutsche Bank as Trustee were not "authorized to do business in this state," as that

phrase is used in Ark. Code Ann. § 18-50-117, and, therefore, neither Defendant

Deutsche Bank National Trust Company nor Deutsche Bank as Trustee could avail itself of the procedures of Statutory Foreclosure Act.

32.     The Auction failed to effect a sale of the Property under the Statutory Foreclosure Act.

33.     In March 2010, Deutsche Bank as Trustee entered a contract to sell the Property to the plaintiffs.  The plaintiffs paid Deutsche Bank as Trustee the purchase price and did all other acts required under the contract.

34.     On or about March 22, 2010, Deutsche Bank as Trustee executed and delivered to Plaintiffs Jonathan D. Dial and Lydia A. Dial a Special Warranty Deed purportedly conveying fee simple title to the Property, and Deutsche Bank as Trustee bound itself to warrant and defend the title to the Property.  Exhibit C. All terms and conditions of the contract merged into the Special Warranty Deed by operation of law.

35.     The March 22, 2010 Special Warranty Deed failed to effect a transfer of fee simple title to the Property because Deutsche Bank as Trustee had not acquired any title to transfer.

## COUNT ONE – DECLARATORY JUDGMENT

36.     Plaintiffs incorporate into this Count all preceding paragraphs of this complaint.

37.     The Arkansas Declaratory Judgments Act is remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; it is to be liberally construed and administered.  Ark. Code Ann. § 16-11-102.

38.     Courts of record have the power to declare rights, status, and other legal relations; the declaration may be affirmative or negative in form and effect and declarations shall have the force and effect of a final judgment or decree. Ark. Code Ann. § 16-111-103.

39.     Any person interested under a deed, written contract, or other writings constituting a contract or whose rights or other legal relations are affected by a statute or contract may have determined any question of construction or validity arising under the instrument, statute, or contract and obtain a declaration of rights or other legal relations thereunder. Ark. Code Ann. § 16-111-104.

40.     Plaintiffs seek a declaration that, having failed to obtain a certificate from the Arkansas Secretary of State, or otherwise failing to be authorized to do business in this state, neither Deutsche Bank National Trust Company nor Deutsche Bank as Trustee was qualified to do business in this state and, therefore, neither Deutsche Bank National Trust Company nor Deutsche Bank as Trustee could lawfully avail itself of the Statutory Foreclosure Act's procedures; therefore, Deutsche Bank National Trust Company and Deutsche Bank as Trustee failed to foreclose Thomas J. Morton and Wannetta Y. Morton's interest in the Property at the Auction; and Deutsche Bank National Trust Company and Deutsche Bank as Trustee failed to convey fee simple title to the Property when they executed and delivered the Special Warranty Deed to Plaintiffs.

41.     In addition to the foregoing declaration, Plaintiffs reserve the right to apply for further relief based on a declaratory judgment or decree herein.

## COUNT TWO – BREACH OF CONTRACT

42.     Plaintiffs incorporate into this Count all preceding paragraphs of this complaint.

43.     Plaintiffs and Deutsche Bank as Trustee entered a contract, which was merged into the Special Warranty Deed.

44.     The contract and the Special Warranty Deed required Deutsche Bank as Trustee to convey fee simple title to the Property.

45.     The plaintiffs paid Deutsche Bank as Trustee the purchase price for the Property, as required under the contract and the Special Warranty Deed.

46.     Deutsche Bank as Trustee failed to convey simple title to the Property.

47.     Deutsche Bank as Trustee breached its contract and the Special Warranty Deed with the plaintiffs.

48.     The plaintiffs are entitled to a reasonable attorney's fee, pursuant to Ark. Code Ann. § 16-22-308, assessed by the Court and collected as costs.

## RELIEF REQUESTED

49.     Plaintiffs, on behalf of themselves and all Class members, demand judgment be entered against Defendant and that the Court grant the following:

    a.  A jury trial of all issues triable by right by a jury;

    b.  An order certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

    c.  Judgment against Defendant for Plaintiff's and the Class's asserted causes of action;

d.  Preliminary injunctive relief prohibiting Defendants from taking action to deprive Plaintiffs of possession of the Property;

e.  Positive injunctive relief compelling Defendants to take all steps necessary to effect delivery of fee simple title to the Property to Plaintiffs;

f.  Specific performance of the contract and the Special Warranty Deed;

g.  An award of reasonable attorneys' fees and other litigation costs reasonably incurred; and

h.  Any and all other relief to which the Plaintiff and the Class may be entitled.

Respectfully submitted,

GILL ELROD RAGON OWEN & SHERMAN, P.A.
425 West Capitol Avenue, Suite 3801
Little Rock, Arkansas 72201
(501) 376-3800

By: _Drake Mann_

Drake Mann, Arkansas Bar No. 87108
Christopher L. Travis, Arkansas Bar No. 97093

and

Sean F. Rommel
Arkansas Bar No. 94158
srommel@wylyrommel.com
James C. Wyly
Arkansas Bar No. 90158
jwyly@wylyrommel.com

WYLY~ROMMEL, PLLC
2311 Moores Lane
Texarkana, Texas 75503
(903) 334-8646 (Telephone)
(903) 334-8645 (Fax)

 

# COVER SHEET
## STATE OF ARKANSAS
## CIRCUIT COURT: CIVIL

The civil reporting form and the information contained herein shall not be admissible as evidence in any court proceeding or replace or supplement the filing and service of pleadings, orders, or other papers as required by law or Supreme Court Rule. This form is required pursuant to Administrative Order Number 8. Instructions are located on the back of the form.

## FILING INFORMATION

County: **Pulaski**          District: 6th          Docket Number: CIV- 11 -50c1

Judge: Griffen          Division: 5th          Filing Date: 10|18|11

Plaintiff: Johnathan D. Dial and Lydia A. Dial, husband and Wife, individually, et al

Defendant: Deutsche Bank National Trust Company as Trustee For Morgan Stanley ABS Capital I Inc. Trust 2006-H3, et al

Attorney Providing Information-Drake Mann
☒ Plaintiff   ☐ Defendant   **GILL ELROD RAGON**
425 W. Capitol, Suite 3801
Little Rock, AR 72201
(501) 376-3800

Litigant, if Pro Se:

**Type of Case:**

*Torts*
- ☐ (NM) Negligence: Motor Vehicle
- ☐ (NO) Negligence: Other
- ☐ (BF) Bad Faith
- ☐ (FR) Fraud
- ☐ (MP) Malpractice
- ☐ (PL) Products Liability
- ☐ (OD) Other

*Contracts*
- ☐ (IS) Insurance
- ☐ (DO) Debt: Open Account
- ☐ (PN) Debt: Promissory Note
- ☐ (EM) Employment
- ☒ (OC) Other Breach of warranty

*Equity*
- ☐ (FC) Foreclosure
- ☐ (QT) Quiet Title
- ☐ (IJ) Injunction
- ☐ (PT) Partition
- ☐ (OT) Other _____

*Miscellaneous*
- ☐ (CD) Condemnation
- ☐ (RE) Replevin
- ☐ (DJ) Declaratory Judgment
- ☐ (UD) Unlawful Detainer
- ☐ (IN) Incorporation
- ☐ (EL) Election
- ☐ (FJ) Foreign Judgment
- ☐ (WT) Writs_____
- ☐ (AA) Administrative Appeal
- ☐ (CF) Property Forfeiture
- ☐ (RD) Remove Disabilities
- ☐ (NC) Name Change
- ☐ (OM) Other

**Jury Trial Requested:** ☒ Yes   ☐ No          **Manner of Filing:** ☒ Original ☐ Re-open ☐ Transfer ☐ Return from Federal/Bankruptcy Court

## DISPOSITION INFORMATION

Disposition Date: _____   ☐ Bench Trial   ☐ Non Trial   ☐ Jury Trial

**Judgment Type:**
- ☐ (DJ) Default Judgment
- ☐ (SJ) Summary Judgment
- ☐ (CJ) Consent Judgment
- ☐ (TJ) Trial Judgment
- ☐ (OJ) Other Judgment
- ☐ (PG) Petition Granted
- ☐ (PD) Petition Denied
- ☐ (DF) Decree of Foreclosure

**Dismissal Type:**
- ☐ (DW) Dismissed with Prejudice
- ☐ (DN) Dismissed without Prejudice

**Other:**
- ☐ (TR) Transferred to Another Jurisdiction
- ☐ (RB) Removed to Bankruptcy Court
- ☐ (RF) Removed to Federal Court
- ☐ (AR) Arbitration

**Judgment For:**
☐ Plaintiff   ☐ Defendant   ☐ Both          Judgment Amount: $ _____

Clerk's Signature _____          Date _____
AOC 23  10-01
625 Marshall Street
Little Rock, AR 72201

## STATE OF ARKANSAS
## CIRCUIT COURT
## PULASKI COUNTY

Johnathan D. Dial and Lydia A. Dial,
husband and wife, individually, and on
behalf of similarly situated persons,

*S7h*

FILED 11/14/11 16:22:44
Larry Crane Pulaski Circuit Clerk
CR01

           **Plaintiffs,**

    versus

**Civil Action N° 60CV2011-5001**

Deutsche Bank National Trust Company, as
Trustee for Morgan Stanley ABS Capital I
Inc. Trust 2006-HE3; Morgan Stanley ABS
Capital I Inc. Trust 2006-HE3; and Thomas
J. Morton and Wannetta Y. Morton.

**PLAINTIFFS' FIRST MOTION TO
DISMISS ACTION AGAINST
DEFENDANT WILSON & ASSOCIATES,
PLLC**

           **Defendants.**

Pursuant to Ark. R. Civ. P. 41, Johnathan D. Dial and Lydia A. Dial, husband and wife,

individually, and on behalf of similarly situated persons, apply for an order dismissing without

prejudice their action against Defendant Wilson & Associates, PLLC; the complaint has never

been served.

Respectfully submitted,

GILL ELROD RAGON OWEN & SHERMAN, P.A.
425 West Capitol Avenue, Suite 3801
Little Rock, Arkansas 72201
(501) 376-3800

By: *[signature]*
Drake Mann, Arkansas Bar No. 87108

60CV-11-5001       601-60100034262-016
JOHNATHAN D DIAL ET AL V DEUT 1 Page
PULASKI CO       11/14/2011 04:22 PM
CIRCUIT COURT                    MN00

## GILL ELROD RAGON OWEN & SHERMAN, P.A.
### ATTORNEYS

STEPHEN K. CUFFMAN, P.A.
MATTHEW B. FINCH
ROGER H. FITZGIBBON, JR.
JOHN P. GILL, P.A.
T. DANIEL GOODWIN
DRAKE MANN
KELLY W. MCNULTY
KELLY M. MCQUEEN, P.A.
CHARLES C. OWEN, P.A.
DYLAN H. POTTS
HEARTSILL RAGON III, P.A.
W. BRADFORD SHERMAN
CHRISTOPHER L. TRAVIS, P.A.

METROPOLITAN TOWER
425 WEST CAPITOL AVENUE, SUITE 3801
LITTLE ROCK, ARKANSAS 72201
(501) 376-3800  FAX (501) 372-3359

www.gill-law.com

JUDY P. MCNEIL
JENNY HOLT TEETER
CHAD L. CUMMING, JR.
KATIE A. MIDDLETON
DANIELLE M. WHITEHOUSE
CHAD L. WOOD
ROBERT B. BEACH

BETH ECHOLS, COUNSEL

JOHN A. FOGLEMAN
OF COUNSEL (1911-2004)
W. W. ELROD II (1950-2005)

November 11, 2011

The Honorable Wendell L. Griffen
Pulaski County Circuit Judge, 5th Division
401 West Markham Street, Room 410
Little Rock, Arkansas 72201

FILED 11/22/11 10:22:01
Larry Crane Pulaski Circuit Clerk
MC

Re:   Dial, et al., v. Deutsche Bank National Trust Company
      Pulaski County Circuit Court Civil Action Nº  60CV2011-5001

60CV-11-5001      601-60100034638-032
JOHNATHAN D DIAL ET AL V DEUT 1 Page
PULASKI CO        11/22/2011 10:22 AM
CIRCUIT COURT                    F174

Dear Judge Griffen:

I have enclosed a file-marked copy of the plaintiffs' motion to dismiss Wilson & Associates, PLLC.  This is a motion for voluntary non-suit, pursuant to Ark. R. Civ. P. 41.  The defendants have not been served.

I have enclosed a proposed order of dismissal, which I respectfully request that, if the order meets with your approval, you sign it and ask your staff to deliver it to the clerk for filing.

Sincerely,

Drake Mann
DM/cw

**STATE OF ARKANSAS**
**CIRCUIT COURT**
**PULASKI COUNTY**

CV.5.2011.1361

Johnathan D. Dial and Lydia A. Dial,
husband and wife, individually, and on
behalf of similarly situated persons,

      **Plaintiffs,**

   versus

Deutsche Bank National Trust Company, as
Trustee for Morgan Stanley ABS Capital I
Inc. Trust 2006-HE3; Morgan Stanley ABS
Capital I Inc. Trust 2006-HE3; and Thomas
J. Morton and Wannetta Y. Morton.

      **Defendants.**

FILED 11/22/11 10:23:08
Larry Crane Pulaski Circuit Clerk
MC

**Civil Action Nº 60CV2011-5001**

**ORDER OF VOLUNTARY DISMISSAL**
**OF ACTION AGAINST DEFENDANT**
**WILSON & ASSOCIATES, PLLC**

Before the Court is Plaintiffs' First Motion to Dismiss Action Against Wilson & Associates,

PLLC, pursuant to Ark. R. Civ. P. 41. Based upon the motion, this Court's review of the file,

and the Arkansas Rules of Civil Procedure, the plaintiffs' motion is granted.

IT IS SO ORDERED this _21_ day of November 2011.

Wendell Griffen, CIRCUIT JUDGE

DATED: _11-21-11_

60CV-11-5001    601-60100034620-012
JOHNATHAN D DIAL ET AL V DEU 2 Pages
PULASKI CO    11/22/2011 10:23 AM
CIRCUIT COURT    JU28

Prepared by
Drake Mann
GILL ELROD RAGON OWEN & SHERMAN, P.A.
425 West Capitol Avenue, Suite 3801
Little Rock, Arkansas 72201
(501) 376-3800

**STATE OF ARKANSAS**
**CIRCUIT COURT**
**PULASKI COUNTY**

Johnathan D. Dial and Lydia A. Dial,
husband and wife, individually, and on
behalf of similarly situated persons,

              **Plaintiffs,**
    versus

Deutsche Bank National Trust Company, as
Trustee for Morgan Stanley ABS Capital I
Inc. Trust 2006-HE3; Morgan Stanley ABS
Capital I Inc. Trust 2006-HE3; and Thomas
J. Morton and Wannetta Y. Morton.

              **Defendants.**

Civil Action N° 60CV2011-5001

**PLAINTIFFS' FIRST MOTION TO
DISMISS ACTION AGAINST
DEFENDANT WILSON & ASSOCIATES,
PLLC**

Pursuant to Ark. R. Civ. P. 41, Johnathan D. Dial and Lydia A. Dial, husband and wife,

individually, and on behalf of similarly situated persons, apply for an order dismissing without

prejudice their action against Defendant Wilson & Associates, PLLC; the complaint has never

been served.

Respectfully submitted,

GILL ELROD RAGON OWEN & SHERMAN, P.A.
425 West Capitol Avenue, Suite 3801
Little Rock, Arkansas 72201
(501) 376-3800

By: _____
Drake Mann, Arkansas Bar No. 87108

**STATE OF ARKANSAS**
**CIRCUIT COURT**
**PULASKI COUNTY**

| | |
|---|---|
| Johnathan D. Dial and Lydia A. Dial, husband and wife, individually, and on behalf of similarly situated persons, | |
| **Plaintiffs,** | FILED 02/13/12 10:59:09 Larry Crane Pulaski Circuit Clerk CR01 |
| versus | Civil Action No. 60CV2011-5001 |
| Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE3; Morgan Stanley ABS Capital I Inc. Trust 2006-HE3; and Thomas J. Morton and Wannetta Y. Morton. | **PLAINTIFFS FIRST MOTION FOR EXTENSION OF TIME TO SERVE DEFENDANTS** |
| **Defendants.** | |

Plaintiffs move for an extension of time to serve Defendants Deutsche Bank National Trust Company and Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 and, in support thereof, state as follows:

1. Plaintiffs filed this actioin on October 17, 2011. The 120-day time period for serving the Summons and Complaint has not yet expired.

2. The appropriate agents for service of process for Defendants Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE3, and Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 have not yet been served.

3. Plaintiffs are having difficulty ascertaining the identity and location of Defendants Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE3, and Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 agents for service of process.

4. Arkansas Rule of Civil Procedure 4(i) authorizes the Court to extend the period for serving defendants.

5. For these reasons, Plaintiffs request that the Court extend the time for serving all Defendants. Plaintiffs request that they be given an additional 120 days to serve Defendants.

WHEREFORE, Plaintiffs Johnathan D. Dial and Lydia A. Dial pray that the Court grant their Motion for Extension of Time to Serve Defendants, enter an order granting Plaintiffs an additional 120 days to serve all Defendants, and for all other relief to which they may be entitled.

Respectfully submitted,

GILL ELROD RAGON OWEN & SHERMAN, P.A.
425 West Capitol Avenue, Suite 3 801
Little Rock, Arkansas 72201
(501) 376-3800

By: _____
Drake Mann, Arkansas Bar No. 87108
Christopher L. Travis, Arkansas Bar No. 97093

STATE OF ARKANSAS
CIRCUIT COURT
PULASKI COUNTY
FIFTH DIVISION

FILED 02/14/12 14:54:14 AR
Larry Crane Pulaski Circuit Clerk
CR01

5 fk

Johnathan D. Dial and Lydia A. Dial,
husband and wife, individually, and on
behalf of similarly situated persons,

        **Plaintiffs,**
    versus

Deutsche Bank National Trust Company, as
Trustee for Morgan Stanley ABS Capital I
Inc. Trust 2006-HE3, individually, and as
representative of similarly situated persons;
Morgan Stanley ABS Capital I Inc. Trust
2006-HE3, individually, and as representative
of similarly situated persons; and
Thomas J. Morton and Wannetta Y. Morton.

        **Defendants.**

Civil Action N° 60 – CV- 2011-5001

**FIRST AMENDED AND SUBSTITUTED
COMPLAINT**

60CV-11-5001    601-60100038383-026
JOHNATHAN D DIAL ET AL V DE 40 Pages
PULASKI CO    02/14/2012 02:54 PM
CIRCUIT COURT    FI40

**SUMMARY OF CASE**

1.      Plaintiffs bring this complaint for declaratory judgment pursuant to Ark.

R. Civ. P. 57 and Ark. Code Ann. §§ 16-111-101 – 16-111-111 to determine the rights

and status of the parties with regard to Plaintiffs' contract to purchase land and the deed

into which the contract merged.  Pursuant to Ark. R. Civ. P. 57, Plaintiffs respectfully

request a speedy hearing.

2.      This action also seeks to remedy any past and continuing violations of

Arkansas's Statutory Foreclosure Act, which is codified at Ark. Code Ann. §§ 18-50-101

– 117 (the "SFA").

3.      Defendant Deutsche Bank National Trust Company, as Trustee for

Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 ("DB, as Trustee") and similarly

situated entities violated, and may continue to violate, the SFA by failing to be

"authorized to do business in Arkansas," prior to availing themselves of the remedies provided by the SFA.

4.      Because DB, as Trustee, and other similarly situated entities failed to comply with the requirements of the SFA, all purported statutory foreclosures they conducted are invalid, and DB, as Trustee, and the other similarly situated entities never acquired title to the real properties in which they purported to foreclose their mortgage interests.

5.      Defendant Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 ("Trust 2006-HE3"), and similarly situated trusts, also violated the SFA by failing to be "authorized to do business in Arkansas," prior to availing themselves of the remedies provided by the SFA; because they failed to comply with the requirements of the SFA, purported statutory foreclosures they conducted are invalid, and they did not acquire title to the real property in which they purported to foreclose their mortgage interests.

6.      As a result, entities that failed to be "authorized to do business in Arkansas," before availing themselves of the remedies provided by the SFA failed to convey fee title to anyone who purchased real property that had been foreclosed through the SFA.

7.      These entities breached their covenants to warrant and defend the title against all their own acts.

8.      In addition, any owners of real property who purportedly had their interests in real property foreclosed did not.

9.      DB, as Trustee, is only one of dozens of mortgagees who have violated the SFA by failing to be "authorized to do business in Arkansas," prior to availing themselves of the remedies provided by the SFA.

## THE PARTIES, JURISDICTION, AND VENUE

10.     Plaintiffs, Johnathan D. Dial and Lydia A. Dial, are residents of Pulaski County, Arkansas; they have an interest which would be affected by the declaration of rights sought in this action by virtue of their having purchased Lot 26, Block 17, Overbook Addition to the City of Little Rock, Arkansas, more commonly known as 52 Dove Creek Circle, North Little Rock, Arkansas (the "Property"), from Defendant DB, as Trustee, on or about March 22, 2010.

11.     Deutsche Bank National Trust Company is a foreign corporation; it is a non-depository trust company, and a member of the Federal Reserve.  Deutsche Bank National Trust Company has acted as trustee for various trusts that are "mortgagees" as that term is used in the SFA, and, acting in that capacity, Deutsche Bank National Trust Company has conducted numerous statutory foreclosure sales within and outside Pulaski County, Arkansas.

12.     Thomas J. Morton and Wannetta Y. Morton ("the Mortons") have an interest which would be affected by the declaration of rights sought in this action by virtue of their having mortgaged the Property; they are individual residents of Arkansas.

13.     Trust 2006-HE3 is a foreign trust; it has not obtained a certificate of authority from the Secretary of State pursuant to Ark. Code Ann. § 4-27-1501, nor has it complied with the filing requirements of Ark. Code Ann. § 4-31-402, and, as of January

12, 2010, it was not "authorized to do business in Arkansas," as that phrase is used in Ark. Code Ann. § 18-50-117; it was the successor-in-interest to the Mortons' mortgagee.

14.     This Court has personal jurisdiction over Defendants pursuant to Ark. Code Ann. § 16-13-201.

15.     Venue is proper in this Court pursuant to Ark. Code Ann. § 16-55-213.

## OPERATIVE LAW

16.     The Statutory Foreclosure Act states that no "person, firm, company, association, fiduciary, or partnership, either domestic or foreign, shall avail themselves of the procedures under this chapter unless authorized to do business in this state." Ark. Code Ann. § 18-50-117.

## FACTS

17.     On January 23, 2006, Thomas J. Morton and Wannetta Y. Morton executed and delivered a mortgage, recorded on February 17, 2006, as Instrument No. 2006012916 in the real estate records of Pulaski County, Arkansas, to the "Property". Exhibit A.

18.     On January 12, 2010, Wilson & Associates, P.L.L.C., acting as attorney-in-fact for DB, as Trustee, proceeded to sell the Property at public auction, pursuant to the SFA (the "Auction").

19.     At the Auction, the Property was purportedly sold to DB, as Trustee.

20.     Thereafter, Wilson & Associates, P.L.L.C. prepared a Mortgagee's Deed wherein DB, as Trustee recites:

    a. the Mortons' granting, selling, and conveying the Property to its

       original mortgagee, the Mortons' default, and the status of DB, as

       Trustee, as holder of the Mortons' indebtedness;

    b. its election, upon the Mortons' default, to sell the Property pursuant to

       the SFA, and the occurrence of the Auction.

21.     After these recitals in the Mortgagee's Deed, DB, as Trustee, "does

GRANT, SELL, AND CONVEY" the Property to DB, as Trustee.

22.     The Mortgagee's Deed was filed and recorded in the real estate records of

Pulaski County, Arkansas, on January 22, 2010. Exhibit B.

23.     Thereafter, in March 2010, DB, as Trustee, entered a contract to sell the

Property to Plaintiffs. Plaintiffs paid DB, as Trustee, the purchase price and did all other

acts required under the contract.

24.     On or about March 22, 2010, DB, as Trustee, delivered to Plaintiffs a

Special Warranty Deed wherein DB, as Trustee, stated that it "does hereby convey" the

Property to Plaintiffs and further that DB, as Trustee, "hereby binds itself to warrant and

defend the title as against all acts of the Grantor herein and no other." Exhibit C.

Violation of the SFA

25.     On or before January 12, 2010, and continuing through at least January 22,

2010, neither Deutsche Bank National Trust Company nor DB, as Trustee, nor Trust

2006-HE3 had obtained a certificate of authority from the Secretary of State, pursuant to

Ark. Code Ann. § 4-27-1501.

26.     On or before January 12, 2010, and continuing through at least January 22,

2010, neither Deutsche Bank National Trust Company nor DB, as Trustee, nor Trust

2006-HE3 had complied with the delivery and payment requirements of Ark. Code Ann. § 4-31-402 or otherwise caused the Secretary of State to issue a certificate showing that the declaration of trust is, and has been, on file in the office of the Secretary of State.

27.     On or before January 22, 2010, and continuing through at least January 22, 2010, neither Deutsche Bank National Trust Company nor DB, as Trustee, nor Trust 2006-HE3 were "authorized to do business in this state," as that phrase is used in Ark. Code Ann. § 18-50-117.

Consequences of Violation of the SFA

28.     On account of their failure to be "authorized to do business in this state," neither Deutsche Bank National Trust Company nor DB, as Trustee, nor Trust 2006-HE3 could avail themselves of the procedures of SFA.

29.     The Auction failed to effect a foreclosure of the Mortons' interest in the Property.

30.     The Auction also failed to effect a sale of the Property.

31.     Despite its creation and delivery of the January 22, 2010, Mortgagee's Deed, DB, as Trustee, did not acquire title to the Property.

32.     The March 22, 2010 Special Warranty Deed failed to effect a transfer of fee simple title to the Property.

33.     DB, as Trustee, broke the covenant of seisin on or about March 22, 2010 when it made the covenant of seisin and delivered the Special Warranty Deed to Plaintiffs.

34.     By failing to obtain a certificate of authority from the Secretary of State pursuant to Ark. Code Ann. § 4-27-1501, complying with the filing requirements of Ark.

Code Ann. § 4-31-402, and otherwise failing become authorized to do business in this state before availing itself of the procedures of the SFA, DB, as Trustee, and Trust 2006-HE3 performed the acts that created the defects in Plaintiffs' title.

Appropriate Relief

35.    Plaintiffs, who, as grantees, have an interest in the March 22, 2010 Special Warranty Deed, are entitled to a determination of the validity of that deed and a declaration

    a.  that the Mortgagee's Deed is void;

    b.  that the Special Warranty Deed is void;

    c.  that the Mortons hold paramount title to the Property;

    d.  that DB, as grantor, breached its covenant of seisin;

    e.  that Plaintiffs have an immediate right of action against DB;

    f.  that Plaintiffs are entitled to damages, even if only nominal;

    g.  that Plaintiffs are entitled to equitable relief, including specific performance of the covenant of seisin;

    h.  that Plaintiffs are entitled to supplemental relief herein; and

    i.  that Plaintiffs are entitled to their costs, including a reasonable attorney's fee.

## PLAINTIFF CLASS ALLEGATIONS

36.    The Plaintiffs bring this state-wide class action on behalf of themselves and all other persons similarly situated in relation to Deutsche Bank National Trust Company (or any other person or entity) that is a "mortgagee" (as defined in Ark. Code Ann. § 18-50-101(7).

37.    The proposed class is defined as follows:

All persons who, on or after October 17, 2006, purchased real property and are grantees thereto in a general or special warranty deed from an entity that was not authorized to do business in Arkansas before availing itself of the procedures of Title 18, Chapter 50, of the Arkansas Code.

Excluded from the class are the following individuals and/or entities:

a.   Defendants;

b.   Individuals or entities, if any, who timely opt out of this proceeding using the correct protocol for opting out;

c.   Individuals or entities, if any, who have previously settled or compromised claims(s) as identified herein for the class; and

d.   Any currently sitting circuit judge and/or person within the third degree of consanguinity to any circuit judge.

38.    Plaintiffs will fairly and adequately protect the interests of the class, and are adequate representatives of the class of persons defined herein. The plaintiffs are interested in the outcome of this lawsuit and understand the importance of adequately representing every member of the class described herein.

Numerosity

39.    On information and belief, persons, firms, companies, associations, fiduciaries, or partnerships ("entities" or "entity") have availed themselves of the procedures under Chapter 50 of Title 18 when they were not authorized to do business in Arkansas on more than two hundred and twenty occasions in Pulaski County alone.

40.    As a result, Plaintiffs are so numerous that it is impracticable to bring them all before the Court within a reasonable time, and a class action is therefore superior to other methods for the fair and efficient adjudication of this controversy.

Commonality

41.    There are common questions of law and fact affecting the members of the class. Such common questions predominate over any questions affecting only individual class members.

42.    These questions include, but are not limited to:

a.  what action is required for an entity to be "authorized to do business" in this state under the SFA;

b.  if an entity required by the SFA to be "authorized to do business" in this state does not perform the actions required for it to be "authorized to do business" in this state:

i.  can that entity foreclose the interests of any others;

ii.  can that entity conduct a sale under the SFA;

iii.  can that entity convey good title;

iv.  can that entity make and deliver a deed that conveys any right, title or interest in real property; and

v.  does such an entity that makes and delivers to a grantee a general or special warranty deed breach the covenant of seisin.

43.    Claims of the named Plaintiffs are typical of the claims of other members of the class in that they all arise from an entity utilizing the SFA's procedures when the entity was not authorized to do business in the state.

Adequacy of Representation

44.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests do not conflict with the interests of the Class members.  Furthermore,

Plaintiffs have retained competent counsel experienced in class action litigation. Plaintiffs' counsel will fairly and adequately protect and represent the interests of the Class.

45.     In addition, DB, as Trustee, has acted on grounds that apply generally to the class, so that declaratory relief or corresponding final injunctive relief is appropriate respecting the Class as a whole.

46.     In addition, questions of law or fact common to the Class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

47.     Jurisdiction and venue are proper in Pulaski County, Arkansas, for the declaratory relief sought.

## DEFENDANT CLASS ALLEGATIONS

48.     Plaintiffs seek certification of a class of defendants who are similarly situated to DB, as Trustee.

49.     The proposed class is defined as follows:

All entities that availed themselves of the procedures under Chapter 50 of Title 18 of the Arkansas Code when they were not authorized to do business in the State of Arkansas and thereafter executed and delivered a general or special warranty deed to the subject real property after October 17, 2006.

50.     On information and belief, DB, as Trustee, is will fairly and adequately protect the interests of the class and is an adequate representative of the class of entities defined herein. DB, as Trustee, is interested in the outcome of this lawsuit and, on information and belief, it understands the importance of adequately representing every member of the classes described herein.

Numerosity

51.     On information and belief, Mortgagees have availed themselves of the procedures under Chapter 50 of Title 18 when it was not authorized to do business in this state on more than two hundred and twenty occasions in Pulaski County alone.

52.     As a result, the parties are so numerous that it is impracticable to bring all before the Court within a reasonable time, and a class action is therefore superior to other methods for the fair and efficient adjudication of this controversy.

Commonality

53.     There are common questions of law and fact affecting the members of the class. Such common questions predominate over any questions affecting only individual class members.

54.     These questions include, but are not limited to:

  a.  what action is required to be "authorized to do business" in the state under the Statutory Foreclosure Act;

  b.  whether a Mortgagee not authorized to do business in this state may avail itself of the procedures of the Statutory Foreclosure Act by using an attorney-in-fact licensed in Arkansas to effect the transaction; and

  c.  whether the authorized-to-do-business requirement is superseded by a conflicting provision in Arkansas' Wingo Act, Ark. Code Ann. § 4-27-1501.

Typicality

55.     Defenses of the named defendant are typical of the defenses of other members of the class in that they all arise from utilizing the Statutory Foreclosure Act's procedures when an entity was not authorized to do business in the state.

Adequacy of Representation

56.     On information and belief, DB, as Trustee, will fairly and adequately protect the interests of the Defendant Class.

57.     On information and belief, DB, as Trustee's interests do not conflict with the interests of the Defendant Class members.

58.     On information and belief, DB, as Trustee, will vigorously defend the action.

59.     In addition, DB, as Trustee, has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Defendant Class as a whole.

60.     In addition, questions of law or fact common to the Defendant Class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Additional Considerations

61.     All purported Defendant Class members utilized the SFA, which requires that an entity "has filed for record with the recorder of the county in which the trust property is situated a duly acknowledged notice of default and intention to sell...." Therefore, the recorder of any county in which a notice of default and intention to sell has

been filed can identify every Defendant Class member, and this Court can thereby ensure that actual notice can be given to, and due process ensured for, every Defendant Class member.

## DECLARATORY JUDGMENT

62.    The Arkansas Declaratory Judgments Act is remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; it is to be liberally construed and administered. Ark. Code Ann. § 16-11-102.

63.    Courts of record have the power to declare rights, status, and other legal relations; the declaration may be affirmative or negative in form and effect and declarations shall have the force and effect of a final judgment or decree. Ark. Code Ann. § 16-111-103.

64.    Any person interested under a deed, written contract, or other writings constituting a contract or whose rights or other legal relations are affected by a statute or contract may have determined any question of construction or validity arising under the instrument, statute, or contract and obtain a declaration of rights or other legal relations thereunder. Ark. Code Ann. § 16-111-104.

## RELIEF REQUESTED

65.    Plaintiffs, on behalf of themselves and all Class members, request the following relief:

    a.  Entry of an order certifying the Class and appointing Plaintiffs and their counsel, Drake Mann, Christopher L. Travis, Sean F. Rommel, and James C. Wyly, to represent the Class;

b. Entry of judgment determining that the warranty deeds (either general or special) delivered to them are invalid and declaring as follows:

    i. that another person (or entity) holds paramount title to the subject property;

    ii. that their grantors breached the covenant of seisin;

    iii. that Plaintiffs have an immediate right of action against their grantors;

    iv. that Plaintiffs are entitled to damages;

    v. that Plaintiffs are entitled to equitable relief;

    vi. that Plaintiffs are entitled to supplemental relief herein; and

    vii. that Plaintiffs are entitled to their costs, including a reasonable attorney's fee;

c. Upon all declaratory relief Plaintiffs obtain, Plaintiffs petition for an order against Defendants, and, on reasonable notice, against all other similarly situated defendants, to show cause why further relief should not be granted forthwith; and

THE REMAINDER OF THIS PAGE HAS BEEN LEFT BLANK.

d.   That Plaintiffs, on behalf of themselves and all Class members, be

granted any and all other relief to which they may be entitled.

Respectfully submitted,

GILL ELROD RAGON OWEN & SHERMAN, P.A.
425 West Capitol Avenue, Suite 3801
Little Rock, Arkansas 72201
(501) 376-3800

By: _____
Drake Mann, Arkansas Bar No. 87108
Christopher L. Travis, Arkansas Bar No. 97093

and

Sean F. Rommel
Arkansas Bar No. 94158
srommel@wylyrommel.com
James C. Wyly
Arkansas Bar No. 90158
jwyly@wylyrommel.com

WYLY~ROMMEL, PLLC
2311 Moores Lane
Texarkana, Texas 75503
(903) 334-8646 (Telephone)
(903) 334-8645 (Fax)

Return To:

~~New Century Mortgage~~
~~18400 Von Karman, Ste 1000~~
~~Irvine, CA 92612~~

This Instrument *Kimberlyann Deshazer*
Prepared By:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612
*KIMBERLYANN DESHAZER*
*XXX DRAWER*

*2970 4613*

Recording Requested by &
When Recorded Return To:
   US Recordings, Inc.
   2925 Country Drive Ste 201
   St. Paul, MN 55117

2006012916
02/17/2006  12:47:15 PM
Filed & Recorded in
Official Records of
PAT O'BRIEN
PULASKI COUNTY
CIRCUIT/COUNTY CLERK
Fees $58.00

000005915

[Space Above This Line For Recording Data]

## MORTGAGE

APN 3N-017-00-406-00
DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  **January 23, 2006**
together with all Riders to this document.
(B) "Borrower" is **Thomas J Morton and Wannetta Y Morton, Husband and Wife**

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is **New Century Mortgage Corporation**

Lender is a **Corporation**
organized and existing under the laws of **California**

1005990154

ARKANSAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3004 1/01

(AR) (0108)
Page 1 of 15                    Initials: *TJM WYM*

VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT
A

00000598

Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated January 23, 2006
The Note states that Borrower owes Lender TWO HUNDRED FIFTEEN THOUSAND AND 00/100
Dollars
(U.S. $215,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than 02/01/2036

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

Initials: _____                                    1005990154

-6(AR) (0108)                    Page 2 of 16                    Form 3004   1/01

00000597

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to Lender the following described property located in the County of Pulaski :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

LOT 26, BLOCK 17, OVERBROOK ADDITION TO THE CITY OF NORTH LITTLE ROCK, PULASKI COUNTY, ARKANSAS.

Parcel ID Number: 33N-017-00-406-00          which currently has the address of
52 Dove Creek Cir          [Street]
North Little Rock          [City], Arkansas 72116          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

1005990154

Initials: TM

-6(AR) (0108)          Page 3 of 15          Form 3004   1/01

0000059☐

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

00000599

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

00000500

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: JM

1005990154

-6(AR) (0108)        Page 6 of 16        Form 3004   1/01

00000301

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

00000E02

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

1005990154

X  Initials: _JM_

0000050✏

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

X Initials: _____

1005990154

-6(AR) (0105)                    Page 9 of 15                    Form 3004   1/01

0000060

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

1005990154

-6(AR) (0108)          Page 10 of 16          Form 3004   1/01

00000605

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

1005990154

Initials: ⟨signature⟩

-6(AR) (0108)      Page 11 of 15      Form 3004   1/01

0000050

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

G0000607

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

It is understood and agreed to by Borrower that this Security Instrument is subject to the foreclosure procedures of the Arkansas Statutory Foreclosure Law, Act 53 of 1987, as amended from time to time (the "Act"), for Borrower's breach of any covenant or agreement in this Security Instrument. In furtherance and not in limitation of the provisions of Section 12, any forbearance by Lender in exercising any right or remedy under the Act shall not be a waiver of or preclude acceleration and the exercise of any right or remedy under the Act, or at the option of Lender, use of judicial foreclosure proceedings.

23. **Release.** Upon payment in full of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

Initials: TJM

1005990154

00000608

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _X_ Thomas J Morton _____ (Seal)
                                  Thomas J Morton               -Borrower

_____    _+_ Wannetta Y Morton _____ (Seal)
                                  Wannetta Y Morton           -Borrower

_____ (Seal)    _____ (Seal)
              -Borrower                              -Borrower

_____ (Seal)    _____ (Seal)
              -Borrower                              -Borrower

_____ (Seal)    _____ (Seal)
              -Borrower                              -Borrower

1005990154

00000609

**STATE OF ARKANSAS,**                                    County ss: PULASKI

On this the 24th day of January 2006 before me, the undersigned officer, personally appeared Thomas and Wannetta Morton, HUSBAND AND WIFE

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she (they) executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

My Commission Expires: 1/26/2008

```
"OFFICIAL SEAL"
Ellis Tharp
Notary Public, State of Arkansas
County of Pulaski
My Commission Exp. 01/26/2008
```

_____
Notary Public   ELLIS THARP

Lien Holder: **New Century Mortgage Corporation**
Address: **11235 SE 6th St, Ste 200**
**Bellevue, WA 98004**
Telephone Number: **425-945-3000**

Contact

for release of lien.

x  Initials: TIM Wym                    1005990154

-6(AR) (0106)             Page 15 of 15                Form 3004   1/01



U29704613-01NE15
MORTGAGE & COPY - COPY
LOAN# T005-113400
US Recordings

2010004203 Received: 1/22/2010 1:41:18 PM Recorded: 01/22/2010 01:55:16 PM
Filed & Recorded in Official Records of PAT O'BRIEN, PULASKI COUNTY
CIRCUIT/COUNTY CLERK Fees $45.00

This Instrument Prepared By:
*Robert M. Wilson, Jr.*
*WILSON & ASSOCIATES, P.L.L.C.*
1521 Merrill Drive, Suite D-220
Little Rock, Arkansas 72211
(501) 219-9388

## RECORDING LEGEND

PLEASE RECORD IN THE
APPROPRIATE REAL ESTATE RECORDS

### GRANTOR(s)
Thomas J. Morton and Wannetta Y. Morton

### GRANTEE(s)
Deutsche Bank National Trust Company, as Trustee
for Morgan Stanely ABS Capital I Inc. Trust 2006-
HE3

## MORTGAGEE'S DEED

WHEREAS, on January 23, 2006, Thomas J. Morton and Wannetta Y. Morton executed and delivered to New Century Mortgage Corporation a mortgage, recorded February 17, 2006, as Instrument No. 2006012916 in the real estate records of Pulaski County, Arkansas, whereby, for the purpose of securing the payment of certain indebtedness set out in said mortgage, they did grant, sell, and convey to the said mortgagee the following-described property, situated, lying, and being in the County of Pulaski, State of Arkansas:

Lot 26, Block 17, Overbrook Addition to the City of North Little Rock, Pulaski County, Arkansas.

Commonly known as: 52 Dove Creek Circle, North Little Rock, Arkansas 72116-6402

AND, WHEREAS, default has been made in the payment of said indebtedness and Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3, as holder of said indebtedness, has since said default elected to sell said property in accordance with the provisions of Ark. Code Ann. §18-50-101, *et seq.*, as amended (the "Act") for the purpose of paying said indebtedness;

AND, WHEREAS, Wilson & Associates, P.L.L.C. was appointed by Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3, pursuant to Act 983 of 1999 as its attorney-in-fact to sell said property pursuant to the Act;

AND, WHEREAS, notice of the time, place, and terms of such sale, as prescribed by the terms of the Act, was given by mailing of the requisite Mortgagee's Notice of Default and Intention to Sell within thirty (30) days of the recording of said Notice, said Notice being published in a local newspaper of general circulation in Pulaski County four (4) times for four consecutive weeks, with the last publication being no more than ten (10) days prior to the sale, and by posting notice of such sale, pursuant to Act 983 of 1999, by a third-party posting provider, at the place in the courthouse for Pulaski County, Arkansas where notices of judicial sales are customarily posted;

W&A No. 72-176119                                        1



EXHIBIT
B

2010004203   2 of 7

AND, WHEREAS, pursuant to the provisions of said Act, Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3, by its attorney-in-fact, Wilson & Associates, P.L.L.C., proceeded to sell said property at public auction, at the Pulaski County Courthouse, on or about January 12, 2010 at 3:30 P.M.;

AND, WHEREAS, at the time and place aforesaid, such sale was conducted pursuant to Act 983 of 1999 by a third-party auctioneer and said property was sold to Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3 for the price and sum of $165,750.00, it being the best and highest bid.

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3, by its attorney-in-fact, Wilson & Associates, P.L.L.C., by virtue of the powers granted by the Act, and in consideration of the foregoing premises and of the sum of $165,750.00, paid by the said Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3, the receipt whereof is hereby acknowledged (which said sum of money has been applied according to the directions of the Act), does GRANT, SELL, AND CONVEY unto the said Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3 and its successors and assigns forever the following-described property, situated in the County of Pulaski, State of Arkansas, to-wit:

Lot 26, Block 17, Overbrook Addition to the City of North Little Rock, Pulaski County, Arkansas.

Commonly known as: 52 Dove Creek Circle, North Little Rock, Arkansas 72116-6402

Tax Parcel No.: 33N0170040600

TO HAVE AND TO HOLD the said property, together with all and singular, the rights and appurtenances thereto in anywise belonging unto the said Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3, its successors, and assigns forever. And for and on behalf of the said Grantor(s) of said mortgage, and their heirs, executors, administrators, and assigns, the undersigned does hereby bind the said Thomas J. Morton and Wannetta Y. Morton, their heirs, executors, administrators, and assigns to warrant and forever defend, all and singular, said premises, unto the said Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

EXECUTED on this _____12th_____ day of _____January_____, _2010_.

Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3, by its attorney-in-fact, Wilson & Associates, P.L.L.C.

By: _____

W&A No. 72-176119                                       2

Matthew Smith 2006098
Director

## ACKNOWLEDGMENT

STATE OF ARKANSAS
COUNTY OF PULASKI

Before me, the undersigned notary public of the state and county aforesaid, personally appeared Matthew Smith, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such person to be a Director (or other such officer authorized to execute the instrument) of Wilson & Associates, P.L.L.C., attorney-in-fact for Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3, and that such officer executed the foregoing instrument for the purposes therein contained by personally signing his name thereto.

Witness my hand and seal at office in Little Rock, Arkansas this ____ day of ____
10.

_____
Notary Public

My Commission Expires:

MELISSA G. PERESKO
Notary Public-Arkansas
Pulaski County
My Commission Expires 09-08-2014

### CERTIFICATE OF COMPLIANCE

I certify under penalty of false swearing that the legally correct amount of documentary stamps have been placed on this instrument.

_____
Matthew Smith
Agent of Grantee
1521 Merrill Drive, Suite D-220
Little Rock, AR 72211

Grantee's Address:
Wells Fargo Bank N.A.
3476 Stateview Boulevard
Fort Mill, SC 29715
Tax Parcel No. 33N0170040600
Loan No. xxxxxx0640

W&A No. 72-176119                                    3

# EXHIBIT "A"

## SERVICEMEMBERS CIVIL RELIEF ACT AFFIDAVIT

STATE OF Arkansas

COUNTY OF Pulaski

BEFORE ME, the undersigned authority, on this day personally appeared Matthew Smith, who after being duly sworn, deposed and stated:

1. I am the Director with a certain mortgage, dated January 23, 2006, recorded, February 17, 2006, as Instrument No. 2006012916, in the real estate records of Pulaski County, Arkansas, executed by Thomas J. Morton and Wannetta Y. Morton in favor of New Century Mortgage Corporation to secure the payment of a promissory note to New Century Mortgage Corporation.

2. Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3 is the holder of or agent for the holder of the indebtedness secured by said mortgage.

3. To the best of my knowledge and belief, the mortgagors holding an interest in the above-described property were (1) not members of the Armed Forces of the United States of America and had not been members of any such entities for at least three (3) months prior to the date of the foreclosure sale the subject hereof or (2) were members Armed Forces of the United States of America at the time the security instrument was executed.

4. As such, foreclosure of this property will not be subject to the provisions of 50 U.S.C.S. §501, *et seq.* (the Servicemembers Civil Relief Act).

FURTHER AFFIANT SAYETH NOT.

DATED this _12th_ day of _January_, _2010_.

Matthew Smith 2006098
Director

72-176119                                        1

## ACKNOWLEDGMENT

STATE OF Arkansas

COUNTY OF Pulaski

    Personally appeared before me, a Notary Public of the state and county aforesaid, duly commissioned and qualified, Matthew Smith, as Director, with whom I am personally acquainted, and who acknowledged that he or she executed the within instrument as Director for the purposes therein contained.

    Witness my hand and seal at office in Little Rock, Arkansas this 12 day of Jan , 10 .

Notary Public

My Commission Expires: _____

MELISSA G. PERESKO
Notary Public-Arkansas
Pulaski County
My Commission Expires 09-08-2014

DServiceMembersAffidavitAR_gmcnatl_100112_1653

72-176119                                    2

2010004203   6 of 7



Department of Defense Manpower Data Center                    Nov-04-2009 14:18:53

**Military Status Report**
Pursuant to the Service Members Civil Relief Act

| Last Name | First/Middle | Begin Date | Active Duty Status | Active Duty End Date | Service Agency |
|---|---|---|---|---|---|
| MORTON | THOMAS | Based on the information you have furnished, the DMDC does not possess any information indicating the individual status. | | | |

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).



Pursuant to the Service Members Civil Relief Act

| Last Name | First Name | Begin Date | Active Duty Status | Active Duty End Date | Service Agency |
|---|---|---|---|---|---|
| MORTON | WANNETTA | Based on the information you have furnished, the DMDC does not possess any information indicating the individual status. | | | |

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).

*Mary M. Snavely-Dixon*

1. **Not** possess information regarding whether the individual is on active duty, or
2. Possess information indicating that the individual is or was on active duty.

Digital Certificate Help

2010023151 Received: 4/26/2010 10:23:30 AM Recorded: 04/26/2010 10:49:43 AM
Filed & Recorded in Official Records of PAT O'BRIEN, PULASKI COUNTY
CIRCUIT/COUNTY CLERK Fees $25.00





## Associates Closing & Title

I certify under penalty of false swearing that the legally correct amount
of documentary stamps have been placed on this instrument. If none shown, exempt
or no consideration paid.



Grantee or Agent: _Johnathan D. Dial and Lydia A. Dial_

Grantee's Address: _52 Dove Creek Cir._
_North Little Rock, AR 72116_

## SPECIAL WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS:

THAT, **Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3**, Grantor, having been duly authorized by a resolution of its board of directors or otherwise, by and through its duly appointed attorney-in-fact **Wells Fargo Bank, N.A.**, for and in consideration of the sum of Ten Dollars ($10.00), and other good and valuable consideration, in hand paid by **Johnathan D. Dial and Lydia A. Dial, husband and wife**, Grantees, the receipt and sufficiency of which is hereby acknowledged, does hereby convey unto the said Grantees, and unto their heirs and assigns forever, the following lands situated in **Pulaski** County, Arkansas, to-wit:

**Lot 26, Block 17, Overbrook Addition to the City of North Little Rock, Pulaski County, Arkansas.**

This Instrument Prepared by:
Wilson & Associates, P.L.L.C.
1521 Merrill Drive, Suite D-220
Little Rock, Arkansas 72211
7000-2592
7000-2592



EXHIBIT
C

TO HAVE AND TO HOLD the same unto the said Grantees, and unto their heirs and assigns forever, with all tenements, appurtenances and hereditaments thereunto belonging, subject to current taxes and other assessments, reservations in patents and all easements, rights-of-way, encumbrances, liens, covenants, conditions, restrictions, obligations and liabilities as may appear of record, the Grantor hereby binds itself to warrant and defend the title as against all acts of the Grantor herein and no other.

EXECUTED in the name of the Grantor this _22_ day of _March_ _2010_ .

Deutsche Bank National Trust Company, as Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3
By Wells Fargo Bank, N.A. as Attorney-in-Fact

BY: _____   Janet B. Farmer
                                VP Loan Documentation

This Instrument Prepared by:
Wilson & Associates, P.L.L.C.
1521 Merrill Drive, Suite D-220
Little Rock, Arkansas  72211
7000-2592
7000-2592

2010023151   3 of 3

## ACKNOWLEDGMENT

STATE OF (    California    )
           )ss.
COUNTY OF (   San Bernardino )

     On this day before me, a Notary Public, personally appeared ____ Janet B. Farmer ____,
well-known, who acknowledged that he/she is the _____ VPLD _____ of Wells Fargo
Bank, N.A., a corporation, as attorney-in-fact for Deutsche Bank National Trust Company, as
Trustee for Morgan Stanely ABS Capital I Inc. Trust 2006-HE3, a corporation, and that he/she as
such officer, being authorized so to do, has executed the foregoing instrument for the consideration
and purposes therein contained, by signing the name of the corporation as such attorney-in-fact by
himself/herself as such officer.

     Witness    my    hand    and    notary    seal    this   22   day   of
_____ , 2010

```
          S. L. HUNT
     Commission # 1808409
     Notary Public - California
       San Bernardino County          _____
    My Comm. Expires Aug 3, 2012        Notary Public
```

My commission expires: August 3, 2012

This Instrument Prepared by:
Wilson & Associates, P.L.L.C.
1521 Merrill Drive, Suite D-220
Little Rock, Arkansas 72211
7000-2592
7000-2592

CV.5.2012.194

# STATE OF ARKANSAS
# CIRCUIT COURT
# PULASKI COUNTY

Johnathan D. Dial and Lydia A. Dial,
husband and wife, individually, and on
behalf of similarly situated persons,

               **Plaintiffs,**

    **versus**

Deutsche Bank National Trust Company, as
Trustee for Morgan Stanley ABS Capital I
Inc. Trust 2006-HE3; Morgan Stanley ABS
Capital I Inc. Trust 2006-HE3; and Thomas
J. Morton and Wannetta Y. Morton.

               **Defendants.**

FILED 02/21/12 15:08:11
Larry Crane Pulaski Circuit Clerk
FG

**Civil Action No. 60CV2011-5001**

**ORDER GRANTING PLAINTIFFS'
FIRST MOTION FOR EXTENSION OF
TIME TO SERVE DEFENDANTS**

Before the Court is the motion of the Plaintiffs to extend for 120 days the time to serve

Defendants.  After reviewing the motion, the pleadings, and other matters of record and after

reflecting upon them for a time, the Court finds the order sought to be reasonable and therefore

grants the Plaintiffs an additional 120 days to serve Defendants.

    IT IS SO ORDERED.

CIRCUIT JUDGE

Dated: _2-24-12_

60CV-11-5001    601-60100038628-003
JOHNATHAN D DIAL ET AL V DEU 2 Pages
PULASKI CO     02/21/2012 03:08 PM
CIRCUIT COURT              OR44

## GILL ELROD RAGON OWEN & SHERMAN, P.A.
### ATTORNEYS

STEPHEN K. CUFFMAN, P.A.
MATTHEW B. FINCH
ROGER H. FITZGIBBON, JR.
JOHN P. GILL, P.A.
T. DANIEL GOODWIN
DRAKE MANN
KELLY W. MCNULTY
KELLY M. MCQUEEN, P.A.
CHARLES C. OWEN, P.A.
DYLAN H. POTTS
HEARTSILL RAGON III, P.A.
W. BRADFORD SHERMAN
CHRISTOPHER L. TRAVIS, P.A.

METROPOLITAN TOWER
425 WEST CAPITOL AVENUE, SUITE 3801
LITTLE ROCK, ARKANSAS 72201
(501) 376-3800  FAX (501) 372-3359

www.gill-law.com

JUDY P. MCNEIL
JENNY HOLT TEETER
CHAD L. CUMMING, JR.
KATIE A. MIDDLETON
DANIELLE M. WHITEHOUSE
CHAD L. WOOD
ROBERT B. BEACH

BETH ECHOLS, COUNSEL

JOHN A. FOGLEMAN
OF COUNSEL (1911-2004)
W. W. ELROD II (1950-2005)

February 16, 2012

The Honorable Wendell L. Griffen
Pulaski County Circuit Judge
401 W. Markham Street, Room 410
Little Rock, Arkansas 72201

Re:   Dial, et al., v. Deutsche Bank National Trust Company, et al.
      Pulaski County Circuit Court Civil Action N° 60CV2011-5001

Dear Judge Griffen:

I have enclosed a file-marked copy of Plaintiffs' First Motion for Extension of Time to Serve Defendants in the above-captioned matter.  I have also enclosed the original and three copies of a proposed **Order Granting Plaintiffs' First Motion for Extension of Time to Serve Defendants** for your review.  If the Order meets with Your Honor's approval, please sign it and ask your staff to have it sent to the clerk for filing.

Please do not hesitate to contact me if you have any questions or need anything further.

Sincerely,

Drake Mann

DKM:dkm
Enclosures

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

JOHNATHAN D. DIAL AND LYDIA A. DIAL, ET AL                    **PLAINTIFFS**

VS.                          CASE NO.: 60-CV-2011-5001 – 5 th

FILED 02/29/12 16:52:27
Larry Crane Pulaski Circuit Clerk
AR

DEUSCHE BANK OF NATIONAL TRUST COMPANY,
AS TRUSTEE FOR MORGAN STANLEY ABS
CAPITAL I INC., TRUST 2006-HE3, ET AL                         **DEFENDANTS**

### MOTION FOR EXTENSION OF TIME

Now comes Separate Defendants, Thomas J. Morton and Wannetta Y. Morton
and by and through their attorney, Paul A. Schmidt, Sr., and moves this Court for a 30-
day extension to answer the Plaintiffs Complaint due to the fact that the undersigned
attorney will be out of state from February 28, 2012 through March 12, 2012.

That I have talked with Drake Mann, Attorney for the Plaintiff's and he has no
objection for the extension.

Respectfully submitted by:

By: _____

Paul A. Schmidt, Sr., #67048
SCHMIDT LAW FIRM, PLC
401 W. Pine Street
P.O. Box 564
Cabot, AR 72023
(501) 843-7576

60CV-11-5001     601-60100039136-002
JOHNATHAN D DIAL ET AL V DEU 3 Pages
PULASKI CO          02/29/2012 04:52 PM
CIRCUIT COURT                      MN91

## CERTIFICATE OF SERVICE

    I, Paul A. Schmidt, Sr., hereby certify that a copy of the foregoing Motion has been sent by First Class Mail to Mr. Drake Mann, Attorney at Law, 425 W. Capitol Ave., Suite 3801, Little Rock, AR 72201, on this _27_ day of _____feb_____, 2012.

Paul A. Schmidt, Sr.

# SCHMIDT LAW FIRM, PLC
### (Serving Arkansas Since 1967)

PAUL A. SCHMIDT, SR.                401 W. Pine Street   P. O. Box 564          Cabot (501) 843-7576
PAUL A. SCHMIDT, JR.                    Cabot, Arkansas 72023                Searcy (501) 268-6608
HEATH A. RAMSEY                                                                           1-888-459-3077
Attorneys at Law                                                                        Fax (501) 843-2335
                                                                              Website: www.schmidtelaw.com

Cathy J. Paxie, Legal Asst. to Paul A. Schmidt, Jr.
Penny K. Hawkins, Legal Asst. – Bankruptcy
Debbie Baber, Legal Asst. to Paul A. Schmidt, Sr.

## FACSIMILE COVER SHEET

**PLEASE DELIVER TO:**   Larry Crane

**FIRM:**   Pulaski Co. Circuit Clerk

**FAX NUMBER:**   501-340-8420

**DATE SENT:**   February 29, 2012

**FROM:**   Debbie/Schmidt Law Firm

**NUMBER OF PAGES SENT:**   3   (Including This Page)

---

### IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL (501) 843-7576

---

**RE:**   Johnathan D. Dial and Lydia A. Dial vs. Deusche Bank of National Trust Company, as Trustee for Morgan Stanley ABS Capital I, Inc., Tr4ust 2006-HE3, et al

**MESSAGE:** Please find enclosed a Motion for Extension of Time to be filed in this matter. Please file and return a filed copy to our office by fax.

Original Transmitted Under Separate Cover ( ) Yes ( ) No

### CONFIDENTIAL AND PRIVILEGED

THE INFORMATION CONTAINED IN THIS FACSIMILE IS PRIVILEGED, CONFIDENTIAL INFORMATION, EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW AND IS INTENDED FOR THE SOLE USE OF THE ADDRESSEE. IF THE READER OF THIS FACSIMILE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FAX TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER LISTED ABOVE BY TELEPHONE AND DESTROY THE TRANSMISSION RECEIVED BY YOU. THANK YOU.

CV.5.2012.278

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

JOHNATHAN D. DIAL AND LYDIA A. DIAL, ET AL        PLAINTIFFS

VS.        CASE NO.: 60-CV -2001-5001

FILED 03/09/12 15:04:31
Larry Crane Pulaski Circuit Clerk
F6

DEUSCHE BANK OF NATIONAL TRUST COMPANY,
AS TRUSTEE FOR MORGAN STANLEY ABS
CAPITAL 1 INC., TRUST 2006-HE3, ET AL        DEFENDANTS

### ORDER FOR EXTENSION OF TIME

Upon Motion of Separate Defendants, Thomas J. Morton and Wannetta Y.

Morton and their attorney, Paul A. Schmidt, Sr., is hereby granted an extension to the

8th day of June , 2012.

_____
CIRCUIT COURT JUDGE

3-8-12
_____
DATE

This instrument having been prepared by:

SCHMIDT LAW FIRM, PLC
Paul A. Schmidt, Sr., #67048
401 W. Pine Street
P.O. Box 564
Cabot, AR 72023
(501) 843-7576

60CV-11-5001     601-60100039589-013
JOHNATHAN D DIAL ET AL V DEU 2 Pages
PULASKI CO     03/09/2012 03:04 PM
CIRCUIT COURT     OR44

**PAUL A. SCHMIDT, SR., P.A.**
**PAUL A. SCHMIDT, JR., P.A.**
**HEATH A. RAMSEY**
**CHRISTOPHER R. WARTHEN**
Attorneys at Law

Penny Hawkins, Bankruptcy Legal Asst.
Kim Benton, Legal Asst.
Debbie Kitchens, Legal Asst.
Barb Stattman, Legal Asst.
Jennifer Arnold, Legal Asst.



# SCHMIDT
## LAW FIRM, PLC
*(Serving Arkansas Since 1967)*

401 West Pine Street • P.O. Box 564
Cabot, Arkansas 72023

Cabot (501) 843-7576
Searcy (501) 268-6608
Conway (501) 329-7576
Heber Springs (501) 362-2177
1-888-459-3077
Fax (501) 843-2335
website: www.schmidtslaw.com

February 29, 2012

Hon. Wendell Griffin
Circuit Court Judge
410 Courthouse
401 W. Markham
Little Rock, AR    72201

Re:  Johnathan D. Dial & Lydia A. Dial, et al vs. Deusche
     Bank of National Trust Company, et al
     Pulaski Circuit No.: 60CV-2011-5001

Dear Judge Griffin:

Please find enclosed a copy of the Motion for Extension of Time
along with the Order for Extension of Time regarding the above
referenced matter.  If the Order meets with your approval,
please sign and return to my office in the enclosed self-
addressed stamped envelope.

Thank you for your kind attention to this matter.  If you have
any questions, please do not hesitate to contact me.

Sincerely,
SCHMIDT LAW FIRM, PLC

Paul A. Schmidt, Sr.
PAS:djk

Enclosures
Cc: Drake Mann
    Client

ELECTRONICALLY FILED
2012-Mar-19 16:58:19
60CV-11-5001

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
### FIFTH DIVISION

JOHNATHAN D. DIAL AND LYDIA A. DIAL,
HUSBAND AND WIFE, INDIVIDUALLY, AND
ON BEHALF OF SIMILARLY SITUATED
PERSONS                                                                    **PLAINTIFFS**

v.                              Case No.: **60CV-11-5001**

DEUTSCHE BANK NATIONAL TRUST COMPANY,
AS TRUSTEE FOR MORGAN STANLEY ABS
CAPITAL I INC. TRUST 2006-HE3, INDIVIDUALLY,
AND AS REPRESENTATIVE OF SIMILARLY
SITUATED PERSONS; MORGAN STANLEY ABS
CAPITAL I INC. TRUST 2006-HE3, INDIVIDUALLY,
AND AS REPRESENTATIVE OF SIMILARLY
SITUATED PERSONS; and THOMAS J. MORTON
AND WANNETTA Y. MORTON                                   **DEFENDANTS**

### MOTION TO EXTEND TIME TO RESPOND TO AMENDED COMPLAINT

Separate Defendant Deutsche Bank National Trust Company, as trustee for Morgan

Stanley ABS Capital I Inc. Trust 2006-HE3 ("DBNTC, as Trustee for the Morgan Stanley

Trust") appears by and through its attorneys and for its Motion to Extend Time to Respond to

Amended Complaint states:

1.      On or around October 17, 2011, the plaintiffs, Johnathan D. Dial and Lydia A

Dial, husband and wife, individually, and on behalf of similarly situated persons ("Plaintiffs"),

filed their complaint against DBNTC, as Trustee for the Morgan Stanley Trust, Morgan Stanley

ABS Capital I Inc. Trust 2006-HE3, and Thomas J. Morton and Wannetta Y. Morton.

2.      On February 14, 2012, Plaintiffs filed their Amended and Substituted Complaint

which contains similar allegations and removes Wilson & Associates, P.L.L.C. as a named

defendant (the "Amended Complaint").

3.      On or around February 14, 2012, the Court issued a summons for DBNTC, as

Trustee for the Morgan Stanley Trust.

4.      According to a notation on the summons, the summons and Amended Complaint were served on DBNTC, as Trustee for the Morgan Stanley Trust on February 21, 2012.  Proof of service has not yet been filed.

5.      The time within which DBNTC, as Trustee for the Morgan Stanley Trust must respond to the Amended Complaint expires on March 22, 2012, and DBNTC, as Trustee for the Morgan Stanley Trust is in need of additional time within which to respond to Amended Complaint.

6.      Counsel for DBNTC, as Trustee for the Morgan Stanley Trust has conferred with Plaintiffs' counsel, who has agreed to the extension of time including and until April 22, 2012 for DBNTC, as Trustee for the Morgan Stanley Trust to file and serve its response to the Amended Complaint.

WHEREFORE, separate Defendant Deutsche Bank National Trust Company, as trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 prays that the Court enter an Order extending the time for it to file and serve its response to Plaintiffs' Amended and Substituted Complaint up to and including April 22, 2012.

WRIGHT, LINDSEY & JENNINGS LLP

200 West Capitol Avenue, Suite 2300
Little Rock, AR  72201
Telephone:  501-371-0808
Fax:          501-376-9442
Email: ccoleman@wlj.com

By: _____
        Charles T. Coleman (80030)
        *Attorney for Deutsche Bank National Trust*
        *Company, as trustee for Morgan Stanley ABS*
        *Capital I Inc. Trust 2006-HE3*

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2012, a copy of the foregoing was served by U.S.

mail and email on the following:

      US MAIL:    Drake Mann
                        Gill Elrod Ragon Owen & Sherman, P.A.
                        425 W. Capitol Avenue
                        Suite 3801
                        Little Rock, AR 72201

      EMAIL:      mann@gill-law.com

                        Charles T. Coleman (80030)