IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JOHNATHAN D. DIAL and                                                                PLAINTIFFS
LYDIA A. DIAL, husband and wife,
individually, and on behalf of similarly
situated persons

v.                                   NO. 4:12CV00180 JLH

DEUTSCHE BANK NATIONAL
TRUST COMPANY, as Trustee for
MORGAN STANLEY ABS CAPITAL I INC.
TRUST 2006-HE3, individually, and as
representative of similarly situated persons;
MORGAN STANLEY ABS CAPITAL I INC.
TRUST 2006-HE3, individually, and as
representative of similarly situated persons;
and THOMAS J. MORTON
and WANNETTA Y. MORTON                                                               DEFENDANTS

**OPINION AND ORDER**

The present action arises from a nonjudicial foreclosure and subsequent resale of real property in North Little Rock, Arkansas. Johnathan and Lydia Dial, who purchased the property after the nonjudicial foreclosure, commenced this action in the Circuit Court of Pulaski County, Arkansas, seeking, among other things, a declaratory judgment that the nonjudicial foreclosure was invalid. Deutsche Bank National Trust Company,[1] which foreclosed the property and sold it to the Dials, removed the case to federal court. The Dials have filed a motion to remand for lack of subject matter jurisdiction. For the following reasons, the Court grants the motion.

---

[1] Deutsche Bank National Trust Company acts as trustee for the Morgan Stanley ABS Capital I Inc. Trust 2006-HE3. Both entities were names as defendants. Deutsche Bank argues that because the Morgan Stanley Trust is not a real party in interest or a juridical entity, it cannot be sued in its own name but must be sued under the name of its trustee, Deutsche Bank. For purposes of this opinion, the Court will assume this to be true and refer to Deutsche Bank, in its capacity as trustee for the Morgan Stanley trust, as the only defendant other than the Mortons.

**I.**

On January 23, 2006, Thomas and Wannetta Morton mortgaged their property as security for a debt. Four years later, the Mortons defaulted on the debt. As trustee for the Morgan Stanley Trust, Deutsche Bank held the debt secured by the Mortons' mortgage. After the Mortons' default, Deutsche Bank, pursuant to the Arkansas Statutory Foreclosure Act, Ark. Code Ann. §§ 18-50-101 *et seq.*, sold the property to itself at a public auction. Deutsche Bank then sold the property to the Dials. In doing so, Deutsche Bank gave the Dials a special warranty deed stating that it "hereby convey[ed]" the property to the Dials and that it "binds itself to warrant and defend the title as against all acts of the Grantor herein . . . ." Document #4, at 38-39.

In their amended complaint, the Dials allege that at the time Deutsche Bank foreclosed on and sold the property to itself, Deutsche Bank was not authorized to do business in Arkansas and could not avail itself of the procedures found in the Statutory Foreclosure Act. *See* Ark. Code Ann. § 18-50-117. Thus, according to the Dials, Deutsche Bank's purported foreclosure and sale of the property were invalid, and Deutsche Bank failed to deliver title to the Dials. For relief, the Dials request a declaration:

    a.     that the Mortgagee's Deed is void;
    b.     that the Special Warranty Deed is void;
    c.     that the Mortons hold paramount title to the Property;
    d.     that [Deutsche Bank], as grantor, breached its covenant of seisin;
    e.     that Plaintiffs have an immediate right of action against [Deutsche Bank];
    f.     that Plaintiffs are entitled to damages, even if only nominal;
    g.     that Plaintiffs are entitled to equitable relief, including specific performance of the covenant of seisin;
    h.     that Plaintiffs are entitled to supplemental relief herein; and
    i.     that Plaintiffs are entitled to their costs, including a reasonable attorney's fee.

Document #4, at 7.[2]

On March 22, 2012, Deutsche Bank removed the case to federal court, arguing that the Mortons should be realigned from defendants to plaintiffs and, in the alternative, that the Mortons were fraudulently joined. On June 15, 2012, the Dials filed a motion to remand, arguing that the Court should not realign the Mortons, that there was no fraudulent joinder, and therefore that the Court lacks subject matter jurisdiction because the parties are not diverse.

## II.

A removing party "bears the burden of establishing that the district court [has] original jurisdiction by a preponderance of the evidence." *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011). Thus, when diversity jurisdiction under 28 U.S.C. § 1332 is at issue, as it is here, the removing party must demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000 and that the case is between citizens of different states. The Court should resolve all doubts in favor of remand to state court. *Id.* (citing *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010)).

## III.

It is undisputed that the Mortons and the Dials are citizens of Arkansas.[3] Thus, so long as the Mortons are defendants, the requirement of complete diversity of citizenship is not met. *See In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619-20 (8th Cir. 2010) ("Complete diversity of

---

[2] The second half of the Dials' complaint makes roughly the same allegations and declaratory requests but on a class basis. The Dials have not filed a motion for class certification, however, and neither party argues that the Class Action Fairness Act has any bearing on the issues before the Court.

[3] It is also undisputed that Deutsche Bank is a California citizen.

3

citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship.") (citation omitted)). Deutsche Bank argues that the Court should realign the Mortons as plaintiffs in this action. The Dials argue that no such realignment should occur. The Mortons have not entered an appearance before this Court and thus have not spoken on the issue.[4]

It has long been "well established that the designation of parties as plaintiff or defendant in the pleadings is not controlling in determining jurisdiction." *Dryden v. Dryden*, 265 F.2d 870, 873 (8th Cir. 1959). Instead, the Court has a duty to "look beyond the pleadings, and arrange the parties according to their sides in the dispute." *Id.* (quoting *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69, 62 S. Ct. 15, 17, 86 L. Ed. 47 (1941)). In determining whether parties' interests align or collide, the Court is not bound by mechanical rules, but rather it must analyze the "principal purpose of the suit" and the "primary and controlling matter in dispute." *Id.* (quoting *City of Indianapolis*, 314 U.S. at 69, 62 S. Ct. at 17)). A party's interests will collide with another party only if there is an actual and substantial controversy between them. *Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866, 870 (8th Cir. 1966).

The "primary and controlling matter in dispute," Deutsche Bank argues, is whether it was authorized to conduct business in Arkansas within the meaning of the Statutory Foreclosure Act when it foreclosed on the relevant property. Deutsche Bank contends that the Dials and the Mortons share an interest in this question being answered in the negative, the foreclosure being invalidated, and title returning to the Mortons. As evidence of this shared interest, Deutsche Bank points to the Dials' request for a declaration that the Mortons still hold paramount title to the property.

---

[4] The Mortons were served and received an extension from the state court in order to respond to the complaint but have not appeared since the case was removed to this Court.

This argument fails because Deutsche Bank assumes, without demonstrating, that it is in the Mortons' interest that the foreclosure be invalidated so that they would hold title to the property. *See, e.g.*, Document #47, at 34 ("Invalidating the foreclosure would return title to the Property to the Mortons. Thus, they share Plaintiffs' interest in invalidating the foreclosure." (citation omitted)). It is not necessarily true that the Mortons have an interest in setting aside the foreclosure. As noted, the Mortons were in debt and mortgaged their property to secure the debt. They then defaulted on the debt, which resulted in the foreclosure. The foreclosure sale presumably resulted in satisfaction of some or all of the debt that they owed.[5] If the foreclosure were to be invalidated, then the parties to the mortgage would be returned to the status quo ante, which would mean not only that title would be reinstated in the Mortons but also that their indebtedness would be reinstated to its status before the foreclosure. If the Court were to declare that Deutsche Bank was not authorized to use the Statutory Foreclosure Act, Deutsche Bank's remedy for the Mortons' default would be to initiate a judicial foreclosure.[6] The expense of the judicial foreclosure ultimately could fall on the Mortons. One of the arguments in favor of authorizing nonjudicial foreclosures, after all, is that "since lower foreclosure costs are deducted from the sale proceeds, there is greater likelihood that lenders would have their entire debt repaid and that there may be some proceeds available to the defaulting borrower." Edward H. Schieffler, Legislative Note, *Nonjudicial Foreclosure in Arkansas with the*

---

[5] The record does not indicate the extent to which the Mortons' debt was satisfied by the foreclosure sale. If the Mortons owed a deficiency after the foreclosure sale, Deutsche Bank could have commenced an action to collect the deficiency within twelve months after the sale. *See* Ark. Code Ann. § 18-50-112. Nothing in the record indicates whether Deutsche Bank commenced such an action within twelve months after the foreclosure sale.

[6] Unless the Mortons voluntarily relinquished title, Deutsche Bank could specifically perform its obligations to provide clear title to the Dials only through a judicial foreclosure in which it, again, purchased the property and then conveyed title to the Dials.

*Statutory Foreclosure Act of 1987*, 41 Ark. L. Rev. 373, 386 (1988).  Moreover, if the nonjudicial foreclosure were to be invalidated, Deutsche Bank possibly could pursue a deficiency judgment in a judicial foreclosure, if a deficiency were owed, even if it did not do so following the nonjudicial foreclosure.  Of course, no one really knows what the course of events will be if the nonjudicial foreclosure by Deutsche Bank of the Mortons' property is set aside, but that is the point: Deutsche Bank assumes that it is in the Mortons' interest to set aside the foreclosure and return to the status quo ante, but that is merely an assumption.  There is nothing in the record to show that it is in the Mortons' interest to return to the status quo ante, which means that there is nothing in the record to show that the interests of the Dials and the Mortons are aligned.  Deutsche Bank has the burden of demonstrating that the interests of the Mortons and the interests of the Dials are aligned, and it has not met that burden.

Deutsche Bank also argues that there is no actual and substantial controversy between the Dials and the Mortons because the Dials have not made any allegations against nor requested any relief from the Mortons in the complaint itself, which is what matters for removal purposes.  For example, Deutsche Bank points out that the equitable relief sought by the Dials is specific performance of the covenant of seisin.  This relief, Deutsche Bank contends, cannot be sought from the Mortons because they did not covenant with the Dials.  Thus, Deutsche Bank asserts, the Court should view the Mortons as plaintiffs, not as defendants.

"It is axiomatic that the court's jurisdiction is measured . . . at the time of removal." *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789 (8th Cir. 2012) (quoting *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011)).  That being said, the amended complaint here can be reasonably read to request relief from the Mortons as well as Deutsche Bank.  It is certainly

true that the Dials' complaint requests a declaration that "the Mortons hold paramount title to the property" due to Deutsche Bank's failure to lawfully foreclose on the property under the Statutory Foreclosure Act. The Dials, however, also request equitable and supplemental relief. The term "equitable relief" includes a broad range of remedies, such as an injunction, mandamus, or restitution. *See Slice v. Sons of Norway*, 34 F.3d 630, 633 (8th Cir. 1994) (citing *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1527-28 (9th Cir. 1993)). Arkansas law states that "supplemental relief" is "[f]urther relief based on a declaratory judgment or decree [that] may be granted whenever necessary or proper." Ark. Code Ann. § 16-111-110. While the "primary and controlling matter in dispute," at this point, may be whether Deutsche Bank has authority to use the nonjudicial foreclosure procedure provided in the Statutory Foreclosure Act, if that matter is decided against Deutsche Bank, then the Court will have to determine whether the Dials are entitled to any equitable or supplemental relief concerning property possessed by them but owned by the Mortons. This necessarily would affect the Mortons and place them opposite the Dials. In other words, the "principal purpose of the suit" is for the Dials to obtain title to the property in question from the Mortons, assuming that the nonjudicial foreclosure was invalid. An actual and substantial controversy exists.

## IV.

Deutsche Bank next argues that, even if the parties remain situated as they were originally filed, the Mortons' citizenship should be disregarded for diversity jurisdiction purposes because the Dials fraudulently joined them.

"Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the . . . defendants." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002). As above, Deutsche Bank argues that the Dials have not asserted any claim against,

sought relief from, or alleged wrongdoing on the part of the Mortons. Thus, Deutsche Bank contends, there is no reasonable basis for predicting the imposition of liability against the Mortons under Arkansas law. But, as the Court has already explained, the complaint seeks relief that would affect the Mortons. The Arkansas Declaratory Judgment Act requires that "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Ark. Code Ann. § 16-111-106; *see also* Ark. R. Civ. P. 19(a). The Mortons undoubtedly have an interest that would be affected by a declaration that the nonjudicial foreclosure was invalid. Thus, under Arkansas law, the Mortons are necessary parties to this action; they were not fraudulently joined.

## CONCLUSION

For the reasons stated above, Johnathan and Lydia Dials' motion to remand is GRANTED. Document #42. This action is remanded to the Circuit Court of Pulaski County, Arkansas.

IT IS SO ORDERED this 26th day of September, 2012.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE